CATHERINE A. DiCHIARO *et al.* *vs.* SAUL SPIRITO.

APRIL 24, 1959.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

POWERS, J. This is an action of trespass on the case for deceit. The case was tried before a justice of the superior court sitting without a jury and resulted in a decision for the plaintiffs in the sum of $3,138.83. It is before us on the defendant's bill of exceptions to the decision of the trial justice and to certain evidentiary rulings. The defendant also excepted to the denial of his motion for a nonsuit, but since this exception was neither briefed nor argued it is deemed to be waived.

It appears from the evidence that defendant was engaged in building and selling houses; that on February 10, 1951 plaintiff Louis DiChiaro paid $10 to defendant as a binder on the purchase of a certain lot and the unfinished house

thereon located on Beach Manor Plat in the city of Cranston. The plaintiffs agreed to pay $14,000 for the house and lot. In return defendant agreed to fully complete the house and convey the premises to plaintiffs by warranty deed on or about three months from the date of the agreement. On February 19, 1951 the agreement was executed and plaintiffs paid defendant $1,400 representing 10 per cent of the purchase price. It was expected that the bank would take a first mortgage of $9,000 from plaintiffs and defendant would take back a second mortgage for the balance of $3,600.

At the time the agreement was executed the house was a "shell." The outside was nearly completed but the inside had only rough studding and rough flooring. The defendant was to start immediately to complete the house but he did not do any work on it for some time, and then only after plaintiffs advanced him more money which he claimed he needed to complete the house. However, it was not completed nor did defendant convey the premises in question by warranty deed within the time specified in the agreement.

The plaintiffs asked defendant for the deed on several occasions but he refused, saying he wished to complete the house. The plaintiffs moved into the house January 19, 1952, without a deed, over eight months after the agreed time. The house was still not completed. A title company representative testified that a closing was arranged for February 13, 1952 and that at that time plaintiffs were ready to complete payment but defendant was unable to raise enough money to clear various bills and taxes charged against the premises.

At the time the agreement was executed defendant was greatly indebted with respect to this property. There was a blanket mortgage of $45,000 to People's Savings Bank on all of the work under construction on this plat by defendant, including these premises, a blanket mortgage of

$3,900 to Ernest L. Millmather and his wife covering this and other premises, and attachments by State Lumber Company for $700, by Anthony Ciprio for $2,000, and by Stoughton Lumber Co. for $2,000. In addition he was indebted to the United States government for withholding taxes in excess of $3,100.

On October 29, 1952, while plaintiffs were still living in the house, the first mortgagee foreclosed the mortgage and sold the premises at public auction. Until the auction sale plaintiffs did not know of the foreclosure, nor did they know of the unpaid taxes and other numerous encumbrances relative to defendant's indebtedness heretofore mentioned. The plaintiffs "had no idea that he was indebted."

In their declaration plaintiffs allege that they advanced defendant $2,880 "relying upon the representation of the defendant that he would complete the house forthwith and that he would transfer the said house to the plaintiffs immediately; that the plaintiffs trusted the defendant and relied upon his honesty and integrity and upon his representations that he was in a position and intended to complete the house forthwith and arrange to deed the said property to the plaintiffs; that the plaintiffs believed the defendant's representations to be true."

The plaintiffs further allege "that the defendant knew at the time when he was making the aforesaid representations to the plaintiffs and at the time he took the plaintiffs' money that he was not in a position to complete the said house, and he knew that he was not in a position to make delivery by deed to the plaintiffs; that the representations so made by the defendant to the plaintiffs were false; that such representations were believed by the plaintiffs; that the plaintiffs relied thereon to their damage; and that said representations by the defendant were made with the object of defrauding, cheating and misleading the plaintiffs."

In addition to the $2,880 allegedly paid to defendant, plaintiffs spent divers sums of money for improvements to the house which defendant failed to furnish as he had agreed to do.

The defendant offered to testify as to the rental value of the property for the period it was occupied by plaintiffs but was precluded from doing so by the trial justice on the ground that no set-off had been pleaded. The defendant duly objected and claimed an exception thereto.

In his decision the trial justice found that defendant intended to deceive plaintiffs about the property in question, and "that the defendant knew all the time that he could not transfer that property—could not give a warranty deed * * *." Since plaintiffs were not told that there were encumbrances on the property, with more being added all the time, the trial justice concluded that plaintiffs "had a right to rely upon the statements of the defendant in his agreement and of his subsequent statements that he would complete the house and convey a title thereto," and that as a result plaintiffs were damaged.

The defendant's bill of exceptions contained seven exceptions. Exceptions numbered 1, 4 and 6 were neither briefed nor argued and are deemed to be waived.

Before considering the remaining exceptions we note that in his brief defendant objects to the form by which this action was brought. The writ and declaration state the action as "trespass for fraud and deceit." The proper action for fraud is trespass on the case for deceit. 1 C.J.S. Actions §49, p. 1109; *Moran* v. *Tucker,* 40 R. I. 485. Since defendant did not object to the pleadings in the superior court at any stage of the proceedings, he is now precluded from raising this objection here for the first time. *Gladding* v. *Atchison,* 44 R. I. 69.

The defendant's second exception is to the exclusion of a question he asked one of the plaintiffs as to why they waited some seven or eight months for the house to be com-

pleted if they were not willing to wait. For defendant to be guilty of deceit his misrepresentation of fact must have induced plaintiffs to enter into the agreement. The defendant promised to complete the house by May 9, 1951 and plaintiffs had a right to rely on his representation. What plaintiffs did after the execution of the agreement is immaterial to the issue of whether or not defendant was guilty of deceit at the time it was made. This exception is without merit and is overruled.

The defendant's third exception relates to the admission of testimony showing how much he owed the mortgagee at the time of the foreclosure on the ground that such amount should have been restricted solely to the house in question. The mortgage given by defendant to the bank was a blanket mortgage for $45,000 covering said house and four other houses. It was proper to show that the house was subject to the entire amount of the mortgage. That matter bears on the issue of whether, when the agreement was made, defendant was in a position to give a deed to plaintiffs at the time agreed on. The plaintiffs' question is relevant on this issue . We find this exception to be without merit and it is overruled.

The defendant's seventh exception is to the decision. In reaching his decision the trial justice remarked: "As to whether or not the defendant set out at sometime before the meeting with the plaintiff to deceive anyone about this property, I wouldn't go quite that far, but from the time he met this plaintiff until the transactions were concluded by actions of others, you would have to place that interpretation upon his acts." After carefully examining the transcript we are of the opinion that there was competent evidence from which the trial justice could find that by a fair preponderance of the evidence plaintiffs had proved that defendant was guilty of deceit.

However, it is our judgment that in awarding plaintiffs the sum of $3,138.83 the trial justice misconceived the evi-

dence and that his decision should have been for $2,738.83. While testifying in direct examination, plaintiff Louis Di-Chiaro was apparently confused when he stated that the amount of money paid to defendant was $2,880. In cross-examination, however, he admitted that he had receipts for the payments made on the purchase price and that these receipts totaling $2,490 represented the total sum paid by him to defendant on the purchase price.

Counsel for plaintiffs defend the award by the trial justice on testimony appearing in the transcript that there was an additional receipt for $400 bearing the date of February 17, 1951. No such receipt was received in evidence, and since that date was two days prior to the signing of the agreement, which includes an acknowledgment of $1,400 as a down payment, this leads us to the conviction that the receipt referred to was actually dated November 17, 1951, which receipt is in evidence, and that by inadvertence counsel for defendant misstated the month. The exception of defendant to the decision as it relates to the award of damages in the sum of $3,138.83 is sustained, and as it relates to the finding of deceit is overruled.

The defendant's fifth exception is more serious. The plaintiffs occupied defendant's house from January 1952 until the mortgage thereon was foreclosed in October 1952, over nine months, without paying rent. The defendant was prevented from showing the reasonable rental of the premises on the ground that he had not pleaded a set-off of the rent. We are of the opinion that the trial justice erred in refusing to receive testimony as to the fair rental value of the property during the period it was occupied by plaintiffs.

In *Huff* v. *Knight*, 54 R. I. 370, this court held in an action of assumpsit that since the defendant's claim grew out of the same transaction it was not necessary for him to have pleaded set-off and he should have been permitted

to offer testimony bearing on the question of a fair rental on the theory of recoupment.

The case at bar is a tort action, namely, trespass on the case for deceit. Recoupment, however, is not limited to contract actions. We have held that in an action for deceit based on a contract a defendant can recoup from the damages claimed by a plaintiff by showing an adverse claim which arose out of or was connected with the same transaction. It does not matter whether a defendant's claim arises before or after a plaintiffs cause of action so long as it is a part of the same transaction. *Davidson* v. *Wheeler,* 17 R. I. 433. In that case, quoting from *Stow* v. *Yarwood,* 14 Ill. 424, 427, the court stated at page 435: "This doctrine of recoupment tends to promote justice and prevent needless litigation. It avoids circuity of action and multiplicity of suits. It adjusts by one action adverse claims growing out of the same subject-matter. Such claims can generally be much better settled in one proceeding than in several."

The plaintiffs were in possession of the premises over nine months and not having title thereto were tenants by sufferance. In our opinion the defendant was entitled to recoup a fair rental value in reduction of damages. Therefore this exception is sustained.

The defendant's second and third exceptions are overruled, his seventh exception as it relates to damages is sustained on the ground that they are excessive, and his fifth exception is sustained for the reasons above set forth.

The case is remitted to the superior court for a new trial to allow evidence of the amount of recoupment to be deducted from the award of $2,738.83 as reduced by this court.

*Michael A. Abatuno, Vincent J. Chisholm,* for plaintiffs.

*Joseph V. Ortoleva,* for defendant.