**In re Brian Antoine COX and Katrina Felicia Cox, Debtors.**

**Brian Antoine COX and Katrina Felicia Cox, Plaintiffs,**

**v.**

**BILLY POUNDS MOTORS, INC., Defendants.**

**Bankruptcy No. 96–03041–BGC–13. Adversary No. 97–00138.**

United States Bankruptcy Court, N.D. Alabama, Southern Division.

Sept. 23, 1997.

Cheryl Daugherty (Trial Attorney), Suzanne Yaman, Birmingham, AL, for Debtors.

Ronald Thompson, Birmingham, AL, for Billy Pounds Motors, Inc.

David P. Rogers, Jr., Chapter 13 Standing Trustee.

### Memorandum Opinion on Complaint for Violation of 11 U.S.C. § 362

BENJAMIN COHEN, Bankruptcy Judge.

This matter came before the Court on a *Complaint for Violation of 11 U.S.C. § 362* filed on April 3, 1997 and an *Amended Complaint for Violation of 11 U.S.C. § 362* filed on April 8, 1997. After notice, a hearing was held on June 3, 1997. Brian Antoine and Katrina Felicia Cox, the plaintiff-debtors; Cheryl Daugherty for Suzanne Yayman, the attorney for the plaintiff-debtors; Robert Finch, a representative of Billy Pounds Motors, Inc., the defendant; and Ronald Thompson, the attorney for the defendant, appeared. The matter was submitted on the testimony of Mr. and Ms. Cox and Mr. Finch, other evidence and oral argument.

### I. Findings of Fact

On February 26, 1996, the debtors purchased a 1987 Nissan Maxima from Billy Pounds Motors, Inc., the defendant. The debtors filed their Chapter 13 petition on May 3, 1996. In that petition, the debtors scheduled a secured debt to the defendant for that automobile. In their plan of reorganization, the debtors proposed to pay the scheduled debt, rather than surrender the automobile. Notice of the bankruptcy filing and the debtors' proposals were sent to the

defendant as demonstrated by Court records filed May 10, 1996.

On May 15, 1996, the defendant filed a claim for the automobile debt in the amount of $4,946.54. On June 7, 1996, the defendant filed a *Motion for Relief from Automatic Stay* but withdrew that motion on June 24, 1996. On June 19, 1996, this Court entered an order confirming the debtors' plan. That order provided that the defendant's claim would be paid in the amount of $4,946.54 with the defendant to receive monthly adequate protection payments of $170.00. On June 20, 1996, the debtors objected to the filed claim. On August 27, 1996, the Court entered an order sustaining the debtors' objection to the defendant's claim and reduced that claim to $4,606.54.

On March 17, 1997, the Chapter 13 trustee, citing a default in payments, filed a *Motion to Dismiss* the debtors' case. The defendant received a copy of that motion and a notice that the motion would be heard by the Court on April 14, 1997.

On Easter Sunday, March 30, 1997, the defendant repossessed the debtors' Maxima. On April 17, 1997, the Court conditionally denied the trustee's *Motion to Dismiss.*

On April 3, 1997, the debtors filed the pending complaint for violation of the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(h), seeking compensatory and punitive damages. The defendant answered the complaint and a trial was held before this Court on June 3, 1997.

At the trial on the matter, Mr. Cox, Ms. Cox and Robert Finch, Chief Executive Officer of the defendant, testified. The evidence is uncontroverted. Prior to the repossession, Mr. Cox had interviewed for and was offered a position with Petruccelli's Restaurant located in the Inverness section of metropolitan Birmingham. Mr. Cox accepted that position and gave the required two-weeks notice to his current employer, BellSouth, where he was the company's catering coordinator. Mr. Cox was to report for his new position on the Monday following the repossession. Because he lived in the Woodlawn section of Birmingham, a considerable distance from his new employment, Mr. Cox was required to have reliable transportation. In fact, at the trial, Mr. Cox testified that his new employer explained that they had had prior problems with individuals not arriving on time or missing work and that if he was unable to fulfill that commitment, he would not be retained.

As stated, the car was repossessed on March 30. When Mr. Cox realized that his car was gone, he called the police.[1] On the next day he called his new employer to explain that he would not be able to work that first day.

Mr. Cox attempted to find other transportation, but according to his testimony, none was available.[2] He sought the use of a cousin's car but it was not operable at the time. He was unable to take public transportation because he did not believe such was available. He testified that he could not afford a taxi.

At the time Mr. Cox called the restaurant, or shortly thereafter, (the testimony is not clear) a representative of the restaurant told Mr. Cox that because of Mr. Cox's failure to report to work, someone else had been hired. Mr. Cox lost his new job and was unable to return to his previous position.

Mr. Cox was to be paid $400.00 per week at his new position. He has, according to his testimony, tried to find other work, but has been unable to do so for the approximately 9 weeks that have passed between the date his car was repossessed and the trial of this matter.

Ms. Cox testified that because of the repossession she was unable to work and that her lost wages were approximately $100.00.

---

1. Mr. Cox could not explain why his car was repossessed and the defendant did not offer any evidence regarding the circumstances surrounding its repossession. The defendant's *Answer* offered an explanation but no evidence was produced supporting that explanation. This Court however has considered the facts in the answer for informational purposes.

2. The debtors' listed a second automobile in their bankruptcy petition, a 1985 Cadillac. Mr. Cox testified that this car was not in operating condition.

In regards to the automobile, Mr. Cox testified that the car was returned about two weeks after the repossession. Mr. Cox also testified that at the time he received the car, Mr. Pounds (or a representative, the testimony is not clear) apologized for the repossession, asked if there was anything that he could do for the debtors and offered to call Petruccelli's for Mr. Cox if Mr. Cox would like.

At the time Mr. Cox received his car, he signed a general release form, but after reading the form carefully, rescinded the portion of that form relating to the defendant's liability. The defendant agreed, but asked Mr. Cox to maintain the portion of the release relating to the car's condition. That portion of the form is Defendant's Exhibit No. 1 and supports the defendant's position that only the part relating to the car's condition was retained by the defendant. Mr. Finch testified that there was no damage to the car during repossession or while it was in the possession of the defendant. The debtors did not disagree.

The debtors' attorney represented to the Court that her fees for representing the debtor, if calculated on an hourly basis, would be $1,000.00.

## II. Conclusions of Law

### A. Applicability of the Automatic Stay

Section 1327(b) of the Bankruptcy Code provides that confirmation of a Chapter 13 plan vests all of the property of the estate in the debtor, unless otherwise provided in the plan or in the order confirming the plan. 11 U.S.C. § 1327(b). Neither the plan confirmed in this case on June 19, 1996, nor the order confirming the plan, provides that property of this estate should remain as property of the estate while the plan is being consummated by the debtor, or that property of the estate should not vest in the debtor upon confirmation as otherwise required by section 1327(b). How then is this property affected by the automatic stay of section 362 and an alleged violation of that stay? The simple answer is that the stay applies because the stay operates in favor of both "property of the estate" and "property of the debtor." Regardless of whether the plan or confirmation order impacts certain property, that property is, in this case at least, either property of the estate or of the debtor and is subject to the protections of the automatic stay. An analysis of the pertinent portions of the Bankruptcy Code explains.

Section 362(a)(3) of the Bankruptcy Code provides that the filing of a bankruptcy petition operates automatically as a stay of "any act to obtain possession of *property of the estate* or of *property from the estate* or to exercise control over *property of the estate.*" 11 U.S.C. § 362(a)(3) (emphasis added). Subsection (a)(4) of section 362 provides also that the filing of a bankruptcy petition stays "any act to create, perfect, or enforce any lien against *property of the estate.*" 11 U.S.C. § 362(a)(4) (emphasis added). And subsection (a)(5) of section 362 provides that the filing of a bankruptcy petition stays "any act to create, perfect, or enforce against *property of the debtor* any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(5) (emphasis added).

Pursuant to subsection (c)(1) of section 362, the stay of an act against property of the estate continues only until such property is no longer *property of the estate.* 11 U.S.C. § 362(c)(1). However, under subsection (c)(2) of section 362, the stay of any other act described under subsection (a) of section 362, including an act to enforce a pre-petition lien against *property of the debtor* under subsection (a)(5), continues until the case is closed, or the case is dismissed, or a discharge is granted or denied to the debtor. 11 U.S.C. § 362(c)(2).

■ This case has not been closed or dismissed. The debtors have neither been granted nor denied a discharge. Therefore, even if the debtors' automobile was, by virtue of 11 U.S.C. § 1327(b), *"property of the debtor"* following confirmation rather than *"property of the estate"*, the automatic stay forbad repossession of the automobile by the defendant.[3]

---

**3.** *In re Whigham,* 195 B.R. 667, 673 (E.D.Mich. 1996); *Allen v. Jim Walter Homes, Inc. (In re*

## B. Willful Violation of the Stay

Section 362(h) provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). The defendant enforced its prepetition lien by repossessing the debtors' automobile following plan confirmation. This is an act that is specifically prohibited by 11 U.S.C. § 362(a)(5). However, in order for the Court to award damages on behalf of the debtors and against the defendant, the debtors must demonstrate that they were injured by the stay violation and that the violation of the stay by the defendant was willful.[4]

### 1. Injury

■ Injury to the debtors as a result of the defendant's violation of the stay has been established. Because he lacked transportation, Mr. Cox was unable to report to his new job on the date and the time specified by his new employer. As a consequence, his new employment was summarily terminated. And, having already quit his old job to accept

*Hartley)*, 75 B.R. 394, 397(S.D.Ala.1987), *vacated on other grounds*, 80 B.R. 230 (S.D.Ala.1987); *Sears, Roebuck and Co. v. Burgess (In re Burgess)*, 163 B.R. 726, 728–729 (Bankr.M.D.Pa.1993); *Littke v. Trustcorp Mortgage Co. (In re Littke)*, 105 B.R. 905, 909 (Bankr.N.D.Ind.1989).

4. Although they may be entitled to one, neither party has requested a jury trial in this case either on the issue of liability or for the determination of damages. In miscellaneous instances involving statutorily created causes of action, both the Supreme Court of the United States and the Court of Appeals for the Eleventh Circuit Court have ruled that a party is entitled to a jury trial under the Seventh Amendment to the United States Constitution, even though the statute which created the cause of action does not provide for a trial by jury, if the "statute creates legal rights and remedies, enforceable in an action for damages." *Hill v. Winn–Dixie Stores, Inc.*, 934 F.2d 1518, 1523 (11th Cir.1991), *quoting Curtis v. Loether*, 415 U.S. 189, 195, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974). See *Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry*, 494 U.S. 558, 573, 110 S.Ct. 1339, 1349, 108 L.Ed.2d 519 (1990)(action for back pay against union for alleged breach of duty of fair representation under National Labor Relations Act and Labor Management Relations Act); *Curtis v. Loether*, 415 U.S. 189, 195, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974)(action for damages based on violation of fair housing provisions of the Civil Rights Act of 1968); *Hill v. Winn–Dixie Stores, Inc.*, 934 F.2d 1518, 1523 (11th Cir.1991)(action for damages based on violation of the Jury System Improvements Act); *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir.1982)(action for damages under the Fair Debt Collection Act).

As originally enacted, Section 362 contained no provision for the award of damages for violations of the automatic stay. Almost universally, however, prior to the inclusion of subsection (h), bankruptcy courts awarded damages for violations of the automatic stay, either as part of their inherent contempt powers or as part of their statutory contempt powers granted under Section 105. "Prior to the enactment of § 362(h), sanctions for violating the automatic stay were imposed under the court's contempt powers pursuant to § 105(a) . . . ." *Jove Eng'g, Inc. v. Internal Revenue Serv.*, 92 F.3d 1539, 1552 (11th Cir.1996). Even now, in situations involving non-individual debtors, which are not covered by Section 362(h), bankruptcy courts still award damages based on contempt under Section 105 for stay violations. *Id.* at 1554. Both the Supreme Court and the Eleventh Circuit Court have ruled that, in a proceeding involving indirect contempt, before "serious" damages may be awarded against an alleged contemnor, other than damages which strictly compensate the victim of the contempt for actual loss caused by the contempt or damages designed to compel future performance with a court order which are avoidable through obedience, the contemnor must be afforded the rights guaranteed by the Constitution to criminal defendants, including the right to a jury trial. See *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994)(serious contempt fines for violations of labor injunction were criminal and could only be imposed through jury trial); *Bush Ranch, Inc. v. E.I. DuPont De Nemours & Co.*, 99 F.3d 363 (11th Cir.1996)(serious damages awarded as sanction for indirect contempt resulting from withholding of documents requested during discovery were punitive in nature and could not properly be awarded in civil proceeding without constitutional protections afforded criminal defendants including right to jury trial), *cert. denied*, —— U.S. ——, 118 S.Ct. 263, —— L.Ed.2d —— (1997); *Clark v. Boynton*, 362 F.2d 992 (5th Cir.1966)(compensatory civil contempt fine awarded without constitutional protections afforded criminal defendants including right to jury trial may not exceed actual loss caused by violation of the order plus reasonable expenses in necessary proceedings for presenting contempt for judgment of court). Other courts have held that even before strictly compensatory fines may be rendered for indirect contempt, the contemnor must be accorded the right to a jury trial on the issue of damages. *Lightsey v. Kensington*

the new position, Mr. Cox was left without employment. Mr. Cox has been deprived, by the actions of the defendant, of the wages that he would have earned had his new employment not been terminated. In addition, because she lacked transportation, Mrs. Cox was unable to report to her job and, consequently, lost wages that she would have earned.

## 2. Willfulness

■ A violation of the automatic stay is a "willful violation" if "the violator (1) knew of the automatic stay and (2) intentionally committed the violative act, regardless whether the violator specifically intended to violate the stay." *Jove Eng'g, Inc. v. Internal Revenue Serv.*, 92 F.3d 1539, 1555 (11th Cir.1996). The defendant was listed by the debtors in their bankruptcy petition filed on May 3, 1996. Subsequently, the defendant filed a proof of claim on May 15, 1996; filed a "Motion for Relief From Automatic Stay" on June 7, 1996; withdrew its motion for relief on June 24, 1996; appeared in this Court on August 19, 1996 through its attorney in response to the debtors' objection to its proof of claim; and, received several payments from the Chapter 13 trustee, all before repossessing the debtors' automobile.

■ The defendant unquestionably knew about the automatic stay and does not contend that it did not. Furthermore, the defendant does not contend that repossession of the debtors' car was unintentional or otherwise was the result of anything other than the volition of an employee. The defendant contends, in its answer however, that its employee did not specifically intend to violate the automatic stay, but instead, was operating under the misunderstanding that the debtors' case had been dismissed and that the stay had, as a consequence, been lifted by operation of law.[5] Certainly, the failure of the debtors to make any payments into their Chapter 13 case from December 9, 1996 until April 3, 1997, coupled with the Chapter 13 trustee's Motion to Dismiss that was mailed to the defendant on March 17, 1997, are circumstances that could have engendered a mistaken impression that dismissal of the debtors' case was imminent. However, even if the employee mistakenly believed that the debtors' case had been dismissed and that the stay had been lifted, his violation of the automatic stay, and vicariously that of the defendant, was no less "willful." It does not matter that the employee had no specific intent to violate the automatic stay, but only that he "intentionally committed the violative act." *Id.* In fact, in some cases, a creditor's violation of the stay may be willful even if the creditor believed in good faith that it was justified in taking an action found to be violative of the stay.[6]

Mortgage and Fin. Corp., 294 Ala. 281, 288, 315 So.2d 431, 437 (1975).

5. As explained above in note 1, no evidence was offered to support these contentions.

6. *See Cuffee v. Atlantic Business and Community Dev. Corp. (In re Atlantic Business and Community Dev. Corp.)*, 901 F.2d 325, 329 (3rd Cir.1990); *In re Daniels*, 206 B.R. 444, 446 (Bankr. E.D.Mich.1997); *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 589 (9th Cir. BAP 1995); *Taxel v. Elec. Sports Research (In re Cinematronics, Inc.)*, 111 B.R. 892, 900 (Bankr.S.D.Cal. 1990); *Sansone v. Walsworth (In re Sansone)*, 99 B.R. 981, 987 (Bankr.C.D.Cal.1989); *In re Mullarkey*, 81 B.R. 280, 284 (Bankr.D.N.J.1987); *In re Bragg*, 56 B.R. 46, 50 (Bankr.M.D.Ala.1985); *Swaringim v. Swaringim (In re Swaringim)*, 43 B.R. 1, 4 (Bankr.E.D.Mo.1984). That principle is simply an extension of two generally accepted rules of law. The first is that mistake, whether of law or of fact, does not absolve one from responsibility for damages cause by the intentional interference with the property of another. As stated by the Supreme Court of Louisiana:

> The intent required for a conversion is not necessarily that of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights. A mistake of law or fact is no defense. Persons deal with the chattels or exercise acts of ownership over them at their peril, and must take the risk that there is no lawful justification for their acts.

*Louisiana State Bar Ass'n v. Hinrichs*, 486 So.2d 116, 121 (La.1986). *See also United States v. North Side Deposit Bank*, 569 F.Supp. 948, 957 (W.D.Pa.1983)(conversion); *Byrne v. Frank Cunningham Stores, Inc.*, 89 F.Supp. 489, 491 (D.D.C.1950)(wrongful attachment); *Ocean Nat'l Bank of Kennebunk v. Diment*, 462 A.2d 35, 39 (Me.1983)(conversion); *Beetschen v. Shell Pipe Line Corp.*, 363 Mo. 751, 253 S.W.2d 785, 788 (1952)(trespass); *Labbe v. Premier Bank*, 618 So.2d 45, 47 (La.Ct.App.1993)(conversion); *Gerdes v. Bohemia, Inc.*, 88 Or.App. 62, 744 P.2d 275, (1987)(trespass); *Scott v. Allstate Ins. Co.*, 27 Ariz.App. 236, 553 P.2d 1221, 1225

No order of dismissal was entered or mailed to the defendant, and the motion specifically stated that a hearing on the motion would be held on April 14, 1997. A simple phone call by the defendant to this Court would have resulted in verification that the case was still open and had not been dismissed. *A fortiori*, the defendant may not escape liability under section 362(h) based on a mistake, when the mistake may have resulted in part from a lack of diligence by its employee.

## C. Damages

### 1. Compensatory damages

■ Since the defendant willfully violated the automatic stay, and the debtors were injured by that stay violation, they are entitled, at a minimum, to "actual damages, including costs and attorneys' fees." 11 U.S.C. § 362(h). The term "actual damages" is synonymous with the term "compensatory damages." 25 C.J.S. Damages § 2 (1966). By definition, "actual damages" are "real, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed to 'nominal' damages and 'punitive' damages." *McMillian v. F.D.I.C.*, 81 F.3d 1041, 1054 (1 1th Cir.1996)(quoting *Black's Law Dictionary* (6th Ed.1991 )).[7]

■ Mr. Cox's testimony is unrefuted and unimpeached; he lost his job because he was unable to get to work and could find no alternative means of transportation. Mrs. Cox's testimony is likewise unrefuted and unimpeached; she lost wages for the same reasons. Loss of employment and loss of wages are elements of "actual damages." *McMillian v. F.D.I.C.*, 81 F.3d at 1055; *In re Esposito*, 154 B.R. 1011, 1015 (Bankr.N.D.Ga. 1993). But while Mrs. Cox's damages are definite and easily quantified (the amount of wages she was unable to earn), Mr. Cox's damages, although real and substantial, are indefinite and are not easily quantified. In an attempt to compute them, however, this Court has considered two elements. The first, the measure of wages that Mr. Cox was to earn in his new position. That amount is definite, has been proved by Mr. Cox, and needs no other consideration. The second element, however, the amount of time that Mr. Cox has been or will be unemployed as a result of the stay violation, has not been established. Further consideration of this element is necessary.

■ There is no doubt that the actions of the defendant resulted in the loss by Mr. Cox of a valuable property right.[8] Mr. Cox, however, was not permanently injured by the actions of the defendant and his earning capacity was not permanently impaired. No evidence was presented that suggests that the actions of the defendant present an impediment to Mr. Cox finding a comparable job in the future. Furthermore, the actions of the defendant did not prevent Mr. Cox from seeking other employment or obtaining other transportation after a certain period of time.

Predicting the future however, or divining the precise length of time that Mr. Cox may have remained in his new job are, of course,

---

(1976)(conversion); *La Bruno v. Lawrence*, 64 N.J.Super. 570, 166 A.2d 822, 825 (1960)(trespass), *cert. denied*, 34 N.J. 323, 168 A.2d 694 (1961); *Wilson Freight Forwarding Co. v. Cleveland, Columbus & Cincinnati Highway*, 74 Ohio App. 54, 57 N.E.2d 796, 798 (1943)(conversion). Of course, a mistake induced by the act of the victim may be construed as implied consent under appropriate circumstances, which may constitute a valid defense. *Scott v. Allstate Ins. Co.*, 553 P.2d at 1225.

The second rule is that, in a civil contempt proceeding, the state of mind with which the contemnor violated a court order or injunction is irrelevant, so that good faith, or the absence of an intent to violate the order or injunction is no defense in a contempt proceeding. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69

S.Ct. 497, 499–500, 93 L.Ed. 599(1949); *Ex Parte Textile Workers Union of America CIO*, 264 Ala. 656, 659, 89 So.2d 92, 94 (1956).

7. "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary common meaning." *Perrin v. United States*, 444 U.S. 37, 42–43, 100 S.Ct. 311, 314, 62 L.Ed.2d 199(1979).

8. "One's business or employment is fully recognized in the law of Alabama as in the nature of a property right," and "[t]o unlawfully and maliciously interfere therewith, causing the employee to be discharged by his employer, is actionable." *Hill Grocery Co. v. Carroll*, 223 Ala. 376, 136 So. 789, 791 (1931).

matters of pure speculation. Mr. Cox has been unable to find suitable employment, but that is no reason to believe that he will not find suitable employment tomorrow or in the near future. In contrast, this Court is impressed that Mr. Cox is competent and capable and can find gainful employment. He was, in fact, able to obtain the new position that was lost when the stay violation occurred and was gainfully employed when he took that new position. Under no circumstances however, may this Court presume that Mr. Cox would have kept or stayed in the job lost by the actions of the defendant for the rest of his life and base a calculation of damages on that expectancy. It would be equally unreasonable for the Court to base a calculation of damages on the presumption that Mr. Cox would have left his new position the day after he was scheduled to start, or the presumption that Mr. Cox should have been able to find other employment the day after his car was returned. Somewhere between these extremes lies the appropriate time period, a reasonable approximation of which must be made in order for this Court to arrive at Mr. Cox's damages. In making its determination of that time period, this Court has considered certain general principals of damages, as there are no firm or fast legal standards to apply. Those considered include:

> Damages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered. This is an application in the law of damages of the rule that a man intends the natural and probable consequences of his act. However, damages that are traceable to the act, but not to the legal and natural consequences, are too remote and contingent. This is illustrated by the fact that an intervening independent cause may cause the damage and absolve the defendant from liability. If damages are only imaginary or the possible result of a tortious act, they are too remote to be basis of recovery.

Charles W. Gamble, Alabama Law of Damages § 2–3 (3rd ed.1994).

> As to tort, direct damages are such as follow immediately upon the act done; and consequential damages are such as are the necessary and connected effect of the tortious act, though to some extent depending on other circumstances. If the damages are only the imaginary or possible result of the tortious act, or other and contingent circumstances largely cause the injurious effect, the damages are too remote to be the basis of recovery against the wrongdoer. Damages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered; however, damages traceable to the act, but not its legal or natural consequence, are too remote and contingent. An allowance of damages cannot be based on mere guesswork.

Charles W. Gamble, Alabama Law of Damages § 2–5 (3rd ed.1994).

> Mere uncertainty as to amount of damages does not preclude recovery where the damages are shown to proximately flow from the injury if the defendant's wrongful act has made it difficult for plaintiff to show, with reasonable certainty, the amount of his loss. This is not to de-emphasis, however, the general rule that the existence or amount of damages cannot rest on speculation. The burden on the plaintiff is to present such evidence as reasonably may be expected to be available under the circumstances. If the evidence furnishes data for an approximate estimate of the amount of damages, it is sufficient to support a judgment.

Charles W. Gamble, Alabama Law of Damages § 2–7 (3rd ed.1994).

> The general rule is that when one is injured by the negligence of another, the injured party is bound to lessen damages as far as practicable by the use of ordinary care and diligence. Simply stated, the injured party has the duty to exercise ordinary care to reduce his damages and is bound to take such care of personal injuries as a reasonably prudent person would in like circumstances; he can only recover such damages as would have been sustained had such care been taken. This doctrine applies to property damage as well as personal injury.

Charles W. Gamble, Alabama Law of Damages § 2–9 (3rd ed.1994).

Legion are the decisions which provide that damages can only be awarded where they are reasonably certain and not based upon speculation. This does not mean that the plaintiff must prove damages to a mathematical certainty or measure them by a money standard. Rather he must produce evidence tending to show the extent of damages as a matter of just and reasonable inference.

Charles W. Gamble, Alabama Law of Damages § 7–1 (3rd ed.1994).

Legal rules and doctrines are designed not only to prevent and repair individual loss and injustice, but to protect and conserve the economic welfare and prosperity of the whole community. Consequently, it is important that the rules for awarding damages should be such as to discourage even persons against whom wrongs have been committed from passively suffering economic loss which could be averted by reasonable efforts, or from actively increasing such loss where prudence would require that such activity cease. The machinery by which the law seeks to encourage the avoidance of loss is by denying to the wronged party a recovery for losses as he could reasonably have avoided, and by allowing him to recover any loss, injury, or expense incurred in the reasonable efforts to minimize his injury.

Charles T. McCormick, *Handbook on the Law of Damages* § 33 (1935).

The general rule prevailing in this country appears to be that merely because a person's employment is terminable at will, this fact will not relieve one whose wrongful act caused the employee to lose a position of gainful employment in which the jury could find that, so long as his work proved satisfactory, his employment would have continued, subject, of course, to any uncertainties of the business and of his ability to labor. The fact that the injured employee's term of employment is terminable at will only affects the amount which he may receive as damages proximately resulting from his wrongful discharge.

*Mays v. Stratton*, 183 So.2d 43, 45 (Fla. Ct.App. 1st Dist. 1966)(jury verdict for wrongful discharge caused by tortious conduct of third party set aside where trial court erred in admitting mortality tables showing plaintiff's life expectancy as basis for calculating damages), *cert. denied*, 188 So.2d 817 (Fla.1966).

Where an employee whose employment is terminable at will is wrongfully discharged because of the tortious conduct of another, the amount of the nominal damages to which he is entitled under the rule in *Chipley v. Atkinson*, supra, is that which he can reasonably establish he has suffered, taking into account, but not necessarily limited to, the type of employment in which he is engaged, the stable or unstable character of his employer, his past employment record, his age, condition of health and ability to labor, and the probability or likelihood that his employment would have continued in the future for a reasonable length of time had his services not been terminated. Such amount must necessarily be diminished by the amount of compensation earned by the plaintiff subsequent to his discharge.

The general rule is equally well settled that in cases of this kind the plaintiff may not recover speculative or conjectural profits or losses of any description, and the measure of recovery is limited to the actual losses established by competent substantial evidence.

*Id.* at 46. *See Otis Elevator Co. v. Scott*, 551 So.2d 489, 490 (Fla.Ct.App.1989)(former employee not entitled to $200,000 award for lost future wages allegedly resulting from retaliatory discharge where employee failed to establish with reasonable certainty that his loss of future wages was the result of a wrongful discharge and did not contend that he attempted to find other work at a similar pay or that his firing hindered his ability to do so).

The evidence is clear that because of the defendant's violation of the automatic stay, Mr. Cox lost a new job in which he was to be paid $400.00 per week. But the evidence is also clear that the defendant's violation of the automatic stay did not reduce Mr. Cox's abil-

ity to earn future wages or otherwise hinder his ability to do so. Beyond that however, the Court must reach its decision by drawing on the circumstantial evidence, as no specific evidence was presented as to Mr. Cox's past employment record, the types of employments in which Mr. Cox has been engaged, the stable or unstable character of those employments, his condition of health and ability to labor, and the probability or likelihood that his employment would have continued in the future for a reasonable length of time had his services not been terminated. In this regard, the Court has considered Mr. Cox's testimony and the documents filed by him with his bankruptcy petition, and from that evidence can draw several conclusions.

Mr. Cox has had an active employment history. According to the "Statement of Financial Affairs" filed with his bankruptcy petition, during the two year period prior to bankruptcy, Mr. Cox has held jobs with several different companies (no information is provided about the length of employment with those companies) and at the time the bankruptcy was filed on May 3, 1996, according to the "Schedule I—Current Income of Individual Debtor(s)" filed with his bankruptcy petition, he was employed as a cook, and had been for about two months, by Applebee's of North Alabama, Inc., a restaurant unrelated to the other jobs listed in his petition. However, some four months later (for a total of six months in the position), that latest employment ended as explained in a copy of a letter from Applebee's to the Chapter 13 trustee, dated September 17, 1996, which indicates that Mr. Cox's employment with that concern was terminated on August 25, 1996. Following that position, according to Mr. Cox's testimony, he began working for BellSouth as a catering coordinator in December 1996, but left that job on March 24, 1997 (for a total of four months), when he accepted the new, but then lost, job at Petruccelli's.

Since the stay violation, Mr. Cox has been unemployed for approximately nine weeks. Whether that time would be shorter or longer if certain events had not occurred, this Court cannot say. Similarly, without additional evidence, this Court cannot find that

Mr. Cox would have remained in his new position with Petruccelli's for much longer than that period of time, and, this Court cannot find that Mr. Cox should not have been able to find work at a similar pay during that period of time or in the very near future. This Court can find however, that the record taken as a whole suggests (a) that Mr. Cox does not tend to stay in any one job for a very long period and (b) that Mr. Cox possesses culinary skills which are readily marketable and (c) that Mr. Cox has been able to find employment in the food service industry in the past. Based on these conclusions and Mr. Cox's work history, the Court must ultimately conclude that the time period used to calculate compensatory damages must be limited, and finds, given the evidence presented, that a reasonable period in this case is three months. Consequently, the Court finds that compensatory damages, in addition to attorney's fees, should be awarded in favor of Mr. and Mrs. Cox and against the defendant in the amount of $5,000.00. That amount will compensate Mr. Cox for approximately twelve weeks of wages and will compensate Mrs. Cox for the $100.00 in wages that she lost as a result of the stay violation.

### 2. Punitive damages

Section 362(h) authorizes an award of punitive damages for stay violations only in "appropriate circumstances." "Appropriate circumstances" has been interpreted to require that the violator's acts be egregious, vindictive, malicious, or accompanied by bad faith. "[E]gregious, intentional misconduct on the violator's part is necessary to support a punitive damages award." *United States v. Ketelsen (In re Ketelsen),* 880 F.2d 990, 993 (8th Cir.1989). "An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to 11 U.S.C. § 362(h)." *Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.),* 902 F.2d 1098, 1105 (2nd Cir.1990). "[O]nly egregious or vindictive misconduct warrants punitive damages for willful violations of the automatic stay of 11 U.S.C. § 362." *Davis v. Internal Revenue Serv.,* 136 B.R. 414, 424 (E.D.Va. 1992).

■ No evidence has been presented that suggests that the actions of the defendant or its employee were egregious, vindictive, malicious, or accompanied by bad faith. The debtors had not made payments into their plan for several months prior to the repossession. The Chapter 13 trustee filed a motion to dismiss the debtors' case. A copy of that motion was sent to the defendant. According to the defendant's answer in this matter, the employee who accomplished the repossession misunderstood that the debtors' case had been dismissed and that it was alright to repossess the car. Of course, this mistaken belief that repossession of the car was legally justified does not excuse the stay violation or resulting liability for compensatory damages and attorney's fees, but it does mitigate against the imposition of punitive damages. So does the fact that, upon learning of the mistake, the defendant was quick to rectify the problem by returning the car, upon obtaining the advice of its attorney, within two weeks of the repossession. Similarly, while the employee that accomplished the repossession knew or should have known that the repossession of the automobile would hamper Mr. and Mrs. Cox's ability to get to work, there is no evidence that either the defendant or the employee knew that Mr. Cox was set to start a new job the day after the car was repossessed.[9]

Because the actions of the defendant and its employee were not proved to have been egregious, vindictive, malicious, or accompanied by bad faith, the imposition of punitive damages under 11 U.S.C. § 362(h) is unwarranted. The debtors' request for an award of punitive damages must, therefore, be denied.

### 3. Attorney's fees

■ The trial attorney for the debtors represented to the Court that she has expended ten hours in counseling with the debtors and advising them regarding the circumstances involved in this case, in communicating with the defendant and its attorney regarding those circumstances, and in the preparation, filing and trial of this case.[10] The trial attorney for the debtors has also represented to the Court that her customary hourly rate is $100.00. Neither of those figures has been either contested or otherwise questioned by the defendant.[11] The Court

9. As noted, there was no direct evidence offered to explain the circumstances of the repossession; however, in order to analyze this matter, the Court must consider the clear circumstantial evidence. Obviously some employee of the defendant was responsible for the actions taken by the corporation, Billy Pounds Motors, Inc.

10. The Court has previously awarded attorney fees in this case of $900.00; however, the Court considers the work performed here outside of the scope of that award. See this Court's opinion in *In re Shamburger*, 189 B.R. 965 (Bankr.N.D.Ala. 1995). If the work had not been outside the normal, this Court would not be inclined to even approve employment of separate or special counsel to prosecute the debtors' claim.

11. The attorney representing the debtors at trial is not the attorney of record for the debtors and has not demonstrated an association with the attorney of record, offered a substitution of counsel after a court granted withdrawal of counsel of record, or entered a formal appearance on behalf of the debtors. The trial attorney did however represent that she was "standing-in" for counsel of record. This Court must assume that there is no formal relationship between the two counsels and must assume that the debtors are not aware that the attorney they retained is not associated with the attorney that represented them at trial.

The choice to hire a particular attorney is a right of a debtor and that debtor has a right to believe that the attorney hired will appear at all hearings to represent the debtor. Neither appears to have occurred here, although the debtors were well represented by trial counsel. The question is which, if either counsel, should be compensated for work associated with this matter. In answer to this question, this Court believes that if the debtors choose to retain the trial attorney, or if there is demonstration of a formal association between the two counsels, the compensation described in this opinion should be paid to the trial attorney; however, under no circumstance should the award be made to counsel of record as she has not earned the award.

To receive the $1,000.00 compensation described herein, trial counsel must file a formal application requesting the award. In that application counsel must explain her association with counsel of record (a relationship, if one exists, that allows trial counsel to represent debtors with whom she has no personal contract) or must demonstrate that the debtors have now retained her, albeit after the fact. Until this Court enters a separate order, pursuant to a filed and approved application, awarding compensation to the trial counsel, the Chapter 13 trustee shall retain the amount awarded. The trustee may not pay the funds to counsel unless a separate order is entered. If an application is filed

finds therefore that the hourly rate claimed is reasonable and that the hours claimed were reasonable in number and necessarily spent.[12] Based on those findings, the amount to be awarded against the defendant and in favor of the debtors will include, in addition to other compensatory damages, attorney's fees in the amount of $1,000.00. The award of those fees is, however, subject to the conditions expressed in note 11 above and the order accompanying this opinion.

## D. Recoupment

 The defendant is entitled to recoupment of the funds owed to it by the debtors from the compensatory damages that the defendant is now obligated to pay the debtors as a result of its violation of the automatic stay. "Recoupment allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of the same transaction to arrive at a just and proper liability on the plaintiff's claim." Holford v. Powers (In re Holford), 896 F.2d 176, 177 (5th Cir.1990) quoting Collier on Bankruptcy para. 553.03 (15th ed. 1984). A claim for damages against a creditor under section 362(h) has been held to have arisen out of the "same transaction" embodied in that creditor's proof of claim.[13] Likewise, under Alabama law, a claim for

and approved, the trustee may pay the money to the trial counsel. If however, trial counsel either does not apply for the compensation within 30 days from the entry date of this order or if an application is made but denied by separate order, the Chapter 13 trustee shall return the funds to the defendant.

12. As described in In re First Colonial Corp. of America, 544 F.2d 1291, 1299 (5th Cir.1977), and its progeny, In re U.S. Golf Corp., 639 F.2d 1197, 1201 (5th Cir.1981), In re Beverly Mfg. Corp., 841 F.2d 365, 370 (11th Cir.1988), and Grant v. George Schumann Tire & Battery Co., 908 F.2d 874, 877 (11th Cir.1990), determining a reasonable fee is a three step process. First, the bankruptcy judge must ascertain the nature and extent of the services supplied by the applicant. Second, once the nature and extent of the services have been determined, the bankruptcy judge must assess the value of those services, that is the reasonableness and necessity of the hours claimed and the hourly rate requested. A determination of the reasonableness and necessity of hours and rates requires consideration of the twelve factors first enunciated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 715–719 (5th Cir.1974). These are: (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; and, (12) Awards in similar cases. In re U.S. Golf Corp., 639 F.2d at 1201; Grant v. George Schumann Tire & Battery Co., 908 F.2d at 877. A reasonable fee may then be determined by multiplying the reasonable hourly rate by the number of hours reasonably expended. Once compensation has been determined, the bankruptcy judge must briefly explain the findings and reasons upon which the award is based, including an indication of how each of the twelve factors affected the decision. In re First Colonial Corp. of America, 544 F.2d at 1300; In re U.S. Golf Corp., 639 F.2d at 1202; Grant v. George Schumann Tire & Battery Co., 908 F.2d at 878.

The Court has considered the twelve factors and makes the following findings: (1) the time and labor required to perform the services associated with this case were reasonable and commensurate with the objective achieved; (2) there were not significant novel or difficult legal questions in this case; (3) the applicant demonstrated the skills necessary to perform the legal services properly; (4) the applicant was not precluded from other practice because of this matter; (5) the applicant's fee was similar to the customary fees for similar work in the community; (6) the fee in this matter was fixed not contingent; (7) there were no time limitations on the applicant; (8) the amounts involved, and the results obtained, in this case were similar to other cases and commensurate with the fee requested by the applicant; (9) the experience, reputation and ability of the applicant are commensurate with the fee requested by the applicant; (10) the case was not undesirable; (11) the applicant's relationship with her client was not a factor; (12) the award is similar to awards in similar cases.

13. In each of the following cases, a suit by the debtor under Section 362(h) for damages, return of property seized, attorneys' fees and costs, resulting from a creditor's institution or continuation of collection proceedings following the filing of the bankruptcy petition was found to have arisen from the same transaction as the creditor's claim. See Pinkstaff v. United States (In re Pinkstaff), 974 F.2d 113, 116 (9th Cir.1992); United States v. Lile (In re Lile), 161 B.R. 788, 791 (S.D.Tex.1993), aff'd in part by mem., 43 F.3d 668 (5th Cir.1994); Gribben v. United States,

conversion based on wrongful repossession has been held to have arisen from the "same transaction" as the sales contract for the property repossessed. *Scroggins v. Alabama Gas Corp.*, 275 Ala. 650, 655, 158 So.2d 90, 95 (1963). As stated by the Supreme Court of Alabama:

It is apparent that appellee's claim rests on the contract between the parties for the purchase of the stove, appellee contending that the plaintiff has breached that contract by nonpayment. Appellant's claim is based in the main on acts committed during defendant's repossession of the stove— trespass, conversion, breach of contract, and money had and received. It can be fairly said, however, that both claims arise out of the same transaction. That transaction is the purchase of a stove and all of the ramifications of that purchase.

The purpose for requiring that a plea of recoupment rest upon the same transaction or contract as the plaintiff's cause of action is to prevent a multiplicity of unrelated issues of fact and law. Certainly, in this case, to allow defendant's claim of breach of contract, which is so vitally connected with plaintiff's cause of action, would be in keeping with that purpose.

*Id.* See also *Nabring v. Bank of Mobile*, 58 Ala. 204, 208 (1877)(pledgee may recoup debt of defendant pledgor to him when sued by the pledgor for conversion of the items pledged); *Di Chiaro v. Spirito*, 89 R.I. 50, 150 A.2d 637, (1959)(defendant vendor entitled to recoup fair rental value for time plaintiff purchasers were in premises without title in reduction of damages awarded against vendor for failure to convey title to premises to purchasers by warranty deed).

While section 553(a) specifically limits the setoff rights of creditors, no section of the bankruptcy code purports to impede a creditor's common law right to recoupment.[14] The records of the Chapter 13 trustee indicate that the defendant is still owed $2,612.10. The compensatory damages awarded herein to the debtors will therefore be reduced by that sum.[15]

158 B.R. 920, 922 (S.D.N.Y. 1993); *In re Boldman*, 157 B.R. 412, 417 (C.D. Ill. 1993); *In re Taylor*, 148 B.R. 361, 363 (S.D.Ga.1992); *In re Cascade Roads, Inc.*, 1992 WL 544948, *3 (W.D.Wash.), *aff'd in part and rev'd in Dart on other grounds sub. nom., United States v. Arkison (In re Cascade Roads, Inc.)*, 34 F.3d 756 (9th Cir.1994); *Taborski v. United States*, 141 B.R. 959, 964 (N.D.Ill.1992); *United States v. Fernandez (In re Fernandez)*, 132 B.R. 775, 780 (M.D.Fla.1991); *Price v. United States (In re Price)*, 130 B.R. 259, 270 (N.D.Ill.1991); *United States v. Bulson (In re Bulson)*, 117 B.R. 537, 541 (9th Cir. BAP 1990), *aff'd mem.*, 974 F.2d 1341 (9th Cir.1992); *Flynn v. United States (In re Flynn)*, 169 B.R. 1007, 1017 (Bankr. S.D.Ga.1994), *aff'd in part and rev'd in part on other grounds*, 185 B.R. 89 (S.D.Ga.1995); *In re Midway Industr. Contractors, Inc.*, 167 B.R. 139, 145 (Bankr.N.D.Ill.1994), *rev'd on other grounds*, 178 B.R. 734 (N.D.Ill.1995); *Hudson v. United States (In re Hudson)*, 168 B.R. 449, 451 (Bankr. S.D.Ga.1994); *Brown v. United States (In re Brown)*, 159 B.R. 1014, 1017 (Bankr.S.D.Ga. 1993); *Adams v. United States (In re Adams)*, 152 B.R. 1021, 1023 (Bankr.M.D.Ga.1993); *Matravers v. United States (In re Matravers)*, 149 B.R. 204, 208 (Bankr.D.Utah 1993); *Fingers v. United States (In re Fingers)*, 148 B.R. 586, 591 (Bankr. S.D.Cal.1993), *aff'd in part and remanded in part on other grounds*, 170 B.R. 419 (S.D.Cal.1994); *In re Long*, 142 B.R. 234, 237 (Bankr.S.D.Ohio 1992); *In re Solis*, 137 B.R. 121, 126 (Bankr. S.D.N.Y.1992).

14. "Setoff" is the right of a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of a transaction which is different from that on which the plaintiff's claim is based. *Holford v. Powers (In re Holford)*, 896 F.2d 176, 178 (5th Cir.1990). Section 553(a) permits the setoff of a prepetition obligation only against another prepetition obligation and thereby prevents a creditor from setting off a prepetition obligation owed by the debtor against a post-petition obligation owed by the creditor to the debtor. Section 553, however, has no application to recoupment. *Holford v. Powers (In re Holford)*, 896 F.2d at 179. (Also, in *In re Seal*, 192 B.R. 442, 457 (Bankr.W.D.Mich. 1996), the bankruptcy court held that section 553 does not specifically forbid the setoff of mutual post-petition obligations so that, subsequent to confirmation of a Chapter 13 plan, the debtors could setoff an automobile seller's liability to them for compensatory and punitive damages, resulting from a violation of the stay, against sums owing by them to the automobile seller under the plan.) Respectfully, this Court does not agree that setoff is applicable to this situation, since the debts involved arose out of the same transaction. However, if this Court had determined that the debts arose out of completely different transactions, application of the reasoning of the Seal court would result in the same outcome as that reached herein.

15. It can be said with equal force that the debtors are entitled to recoup the amounts owed to them from the defendant from the amounts owed by them to the defendant.

### E. The Claim and Lien of Billy Pounds Motors, Inc.

By virtue of recoupment by the defendant of the remaining amount of its claim from the damages owed·as a result of the order to be entered in this proceeding, the claim and debt upon which that claim is based will have been satisfied in full. No further distributions should be made by the trustee to the defendant in connection with this case and the lien on the debtors' automobile which secured the debt and claim of the defendant will be, by virtue of 11 U.S.C. § 506(d), void and no longer of any legal force or effect. The debtors will then own the automobile that was the subject of that security interest free and clear of any interest of the defendant. The remaining compensatory damages owed to the debtor as a result of this Court's order ($3,387.90) should be paid by the defendant to the Chapter 13 trustee. Those damages are, under 11 U.S.C. § 1306(a)(1) and (2), property of the bankruptcy estate.[16]

### F. Conclusion

Based on the foregoing, this Court determines that:

(1) the debtors are entitled to damages in the amount of $6,000.00 (which sum includes actual damages in the amount of $5,000.00 and attorney's fees in the amount of $1,000.00) from Billy Pounds Motors, Inc. as a result of that entity's violation of the automatic stay;

(2) the total amount of damages awarded to the debtors and against Billy Pounds Motors, Inc. should be reduced by $2,612.10, the sum that remains due on the debt owed by the debtors to Billy Pounds Motors, Inc.;

(3) the total amount now due from Billy Pounds Motors, Inc. is $3,387.90, which sum should be paid by Billy Pounds Motors, Inc. to the Chapter 13 trustee;

(4) the claim filed by Billy Pounds Motors, Inc. will be satisfied in full by virtue of the recoupment of the sums owed on the claim from the damages owed by Billy Pounds Motors, Inc.;

(5) by virtue of satisfaction of said claim, the debtors will then own the 1987 Nissan Maxima automobile that once secured that claim, free and clear of any security interest, lien or other interest of Billy Pounds Motors, Inc.;

(6) Billy Pounds Motors, Inc. should transfer title to the 1987 Nissan Maxima automobile to the debtors;

(7) by virtue of satisfaction of its claim, Billy Pounds Motors, Inc. will be owed no money from the debtors and is consequently to receive no further payments in Bankruptcy Case No. 96–03041–BGC–13 from the Chapter 13 trustee; and

(8) from the funds received from Billy Pounds Motors, Inc., the Chapter 13 trustee shall:

 (a) distribute all but the attorney fee award to the debtors' creditors in accordance with the debtors' confirmed plan, excluding, of course, Billy Pounds Motors, Inc.;

 (b) pay the $1,000.00 attorney's fee award to the trial attorney, or refund it to the defendant, depending on which conditions expressed in note 11 above, and in paragraph 10 of the order accompanying the opinion, are met.

A separate order will be entered in accordance with this memorandum opinion.

---

**16.** Under 11 U.S.C. § 1306(a)(1), property of a Chapter 13 bankruptcy case includes property "that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 ..." Pursuant to that definition, property of a Chapter 13 bankruptcy case includes damages recovered by the debtors under 11 U.S.C. § 362(h). *Price v. United States*, 42 F.3d 1068, 1072 (7th Cir.1994), *aff'g Price v. United States (In re Price)*, 130 B.R. 259, 270 (N.D.Ill.1991); *United States v. McPeck*, 910 F.2d 509, 513 (8th Cir.1990); *Koehler v. Iowa College Student Aid Comm'n (In re Koehler)*, 204 B.R. 210, 219 (Bankr.D.Minn.1997); *Flynn v. Internal Revenue Serv. (In re Flynn)*, 169 B.R. 1007, 1016 (Bankr.S.D.Ga.1994), *aff'd in part and rev'd in part on other grounds*, 185 B.R. 89 (S.D.Ga. 1995); *In re Solis*, 137 B.R. 121, 126 (Bankr. S.D.N.Y.1992).