In re Brian HARSH, Debtor.

David E. Mullis, Trustee,

v.

USA Restaurant Equipment Company, Steve Kalkavouras, Patricia Kalkavouras, Defendants.

Bankruptcy No. 00–10755–JDW. Adversary No. 01–1002–JDW.

United States Bankruptcy Court, M.D. Georgia, Albany Division.

Aug. 27, 2001.

**834**

David E. Mullis, Chapter 7 Trustee, Valdosta, GA, for trustee.

### MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Complaint to Avoid Preferential Transfer of a Security Interest, Complaint for Turnover, and Complaint for Damages filed by the Chapter 7 Trustee, David E. Mullis ("Trustee") against USA Restaurant Equipment Company, Steve Kalkavouras, and Patricia Kalkavouras ("Defendants"). This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(F). The Court held a trial on Trustee's Complaint on June 19, 2001. After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

On March 7, 1997, Brian Harsh ("Debtor") entered into an agreement with Defendants under which he purchased restaurant equipment for $32,188.10 in which Defendants retained a security interest. Debtor began making monthly payments for the equipment but later experienced financial difficulty and filed for bankruptcy on June 12, 2000.

Pursuant to Federal Rule of Bankruptcy Procedure 2002, notice of the bankruptcy was sent to Debtor's creditors, including Defendants, informing them of the meeting of creditors on July 12, 2000. On June 23, 2000, Trustee sent a letter to Defendants requesting documents relating to the purchase, loan, security interest, corresponding collateral, and evidence of perfection of the security interest for the purpose of determining whether the bankruptcy estate would claim an interest in the equipment. Defendants failed to respond to Trustee's request and did not appear at the meeting of creditors. Instead, on July 12, 2000–the date of the creditors' meeting-Defendants repossessed the equipment. Defendants insist they received neither notice of the bankruptcy nor Trustee's June 23 letter prior to the repossession.

On July 17, 2000, Trustee sent another letter to Defendants, which Defendants admit having received, informing Defendants that the repossession violated the automatic stay. Trustee explained that removal of the equipment was unlawful and improper because Defendants had failed to provide proof that their security interest was perfected and because Trustee had not abandoned the equipment, thereby making it property of the estate. In the letter, Trustee demanded that Defendants turn over the equipment and informed them that the equipment must be maintained in compliance with local and state regulations. In addition, Trustee requested that Defendants contact him immediately with any documents that establish a perfected security interest.

Defendant Steve Kalkavouras responded to Trustee's letter by informing a member of Trustee's staff that he would throw the equipment away before he would turn it over. Defendants did not seek legal counsel.

Trustee filed a complaint on January 18, 2001, which Defendants did not answer. Trustee filed a Request to Enter Default on April 11, 2001. Pursuant to Federal Rule of Bankruptcy Procedure 7055, the Clerk of Court entered default on April 12, 2001. The only issue remaining for trial was what relief the Court should award Trustee as a result of Defendants' actions. Out of an abundance of caution and in the interest of fairness, the Court permitted Defendants to fully participate in the pretrial conferences and the trial.

A pretrial conference was held on March 19, 2001, at which Defendants appeared pro se and requested that the default be opened. At that conference, the Court ordered Defendants to disclose the location of the equipment so that Trustee could inspect it. When Defendants refused, the Court explained that they were contravening a direct order of the Court. Defendants claimed they understood; however, they still refused to disclose the location of the equipment to the Court. Defendants' disrespect for the Court's order negated the good cause required for opening the default. Furthermore, Defendants presented no defense on the merits. Accordingly, the Court denied the request to open the default and advised Defendants to obtain legal counsel.

The case was first set for trial on May 22, 2001. The Court allowed Defendants to participate in the trial, and they again appeared pro se. At that time, Defendants informed the Court that they were unable to obtain legal counsel but that they would make the equipment available for inspection. The Court continued the trial until June 19, 2001, so Trustee could inspect the equipment. The Court expected Defendants to cooperate with Trustee and help to mitigate the harm caused by their misconduct.

All the equipment except a bread mixer was in operating condition on the date Defendants repossessed it. However, upon inspection, Trustee found that the equipment had so deteriorated since the repossession, that it no longer complied with local and state health regulations and, therefore, had no fair market value. As to the bread mixer, Defendants testified that they discarded it because its motor was burned out when they repossessed the mixer.

At the time the equipment was purchased in March 1997, it had a fair market value of $27,210.00. Trustee relied on IRS rules to determine the value of the depreciated equipment. Pursuant to Revenue Procedure 87–56, 1987–2 C.B. 674, 1987 WL 350424, the equipment has a class life of 18 years and a general depreciation life of 10 years. Having been in use for 3 years and 3 months and having been repossessed 2 months thereafter, the equipment had a depreciation life of approximately 6 years and 6 months remaining at the time of repossession. Based on these figures, Trustee argued that the bread mixer had a fair market value of $6,175.00 on the date of repossession and that the remaining equipment had a fair market value of $11,511.50 on the date of repossession. At the time of trial, the equipment was worthless.

Trustee has expended 24.30 hours in pursuing this case. Calculated at an hourly rate of $125.00, Trustee stated that the total cost of attorney fees was $3,037.50. Trustee further showed that the total amount of expenses incurred by him as attorney was $250.16.

*Conclusions of Law*

Once a court has entered default and denied a request to open the default, the only remaining issue for the court to decide is the remedy to award the prevailing party. However, in this case, because Defendants appeared pro se and did not have a full appreciation for the legal process or the consequences of not complying with that process, the Court permitted Defendants to present their defenses to Trustee's complaint at trial. Therefore, the Court will briefly address the potential merit of those defenses before turning to the issue of remedies.

Defendants claim that they owned the equipment and had a right to repossess it under a writ of possession obtained in state court. However, this defense does not take into account the automatic stay.

A bankruptcy filing creates an estate comprised of certain types of property interests, including all the debtor's legal and equitable interests in property as of the commencement of the case. 11 U.S.C. § 541(a) (West 1994). Any interest of Debtor in the equipment at the time of filing became property of the bankruptcy estate. He had entered into an Agreement to Purchase the equipment, he took possession of the equipment, and he made payments on the equipment. Therefore, he had an interest in the equipment that became property of the bankruptcy estate.[1]

---

1. At trial, Defendants labored under the misguided assumption that because Debtor did not pay for the equipment in full under the terms of the agreement, they owned the equipment and could do with it whatever they wished, including repossessing it. While the Court understands that someone without any knowledge of secured transactions might believe that, it is not the law. When a creditor enters into a signed agreement to sell identified commercial equipment, the creditor delivers the equipment to the debtor, the debtor agrees to pay the creditor in monthly installments, and the creditor reserves the right to repossess the equipment if the debtor does not comply with the terms of the agreement,

■ In addition, when a party files for bankruptcy, the filing operates to stay any act by any entity to obtain possession of or exercise control over property of the estate. 11 U.S.C. § 362(a) (West 1994). Therefore, Defendants' actions in repossessing the equipment 30 days after Debtor filed for bankruptcy and continuing to hold such equipment violated the automatic stay. Defendants stated at trial, however, that they did not know Debtor filed for bankruptcy. They claimed they did not receive notice of the bankruptcy filing or Trustee's letter to them dated June 23, 2000, regarding the bankruptcy. While the Court finds such evidence relevant to the issue of what remedies to allow for the violation of the automatic stay, the Court does not find the evidence relevant to the issue of whether Defendants did, in fact, violate the automatic stay. Any actions taken in violation of the stay whether knowingly or unknowingly are considered void and without effect. *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984); *In re Brown*, 210 B.R. 878 (Bankr. S.D.Ga.1997). Therefore, Defendants' knowledge is only pertinent as to remedies the Court should consider for the violations.

■ Having addressed Defendants' defenses to the substance of Trustee's complaint, the Court will now consider which remedies are appropriate in this case. As of July 17, 2000, the date they received Trustee's second letter, Defendants had knowledge of Debtor's bankruptcy filing and of the unlawful nature of their actions. Thereafter, Defendants continued to exercise control of the equipment and refused all of Trustee's requests for information and for turnover of the equipment. Such behavior constitutes a knowing and willful violation of the automatic stay. As a result of Defendants' willful violation, Trustee is entitled to recover damages, costs, and attorney fees associated with the violation. 11 U.S.C. § 362(h) (West 1994).[2]

■ Because the equipment was found to be of no value at the time Trustee and Debtor inspected it, the actual damages caused by Defendants' violation of the stay is the amount Trustee would have realized from a sale of the equipment. The Court considers Revenue Procedure 87–56, 1987–2 C.B. 674, 1987 WL 350424 as guidance in assessing the value of the equipment, but it will not accept a mechanical determination of the liquidation value. The Court must make an independent determination of the amount Trustee would have received if Defendant had complied with the automatic stay. The amount is certain to be less than the IRS depreciated value based on the purchase price.

---

then the agreement creates a purchase money security interest ("PMSI"). U.C.C. § 9–203(1) (1977). However, for the agreement to be binding against third parties, the creditor must perfect the PMSI. Because Defendants allowed Debtor to take possession of the equipment, under Article 9 of the Uniform Commercial Code (codified at title 11, article 9 of the Official Code of Georgia Annotated), the only way for Defendants to perfect their interest was to file a financing statement with the clerk of superior court of any county in Georgia. U.C.C. §§ 9–302(1); 9–401. Defendants did not do this. Upon Debtor's filing bankruptcy, Trustee gained the rights of a hypothetical lien creditor, which takes priority over an unperfected PMSI. 11 U.S.C. § 544(a) (West 1993); U.C.C. § 9–301(1)(b). Therefore, when Debtor filed for bankruptcy, Trustee's interest in the equipment took priority over Defendants' interest.

2. Section 362(h) provides "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h) (West 1994).

While the Court would have preferred to have expert appraisal evidence as to the amount the estate would have realized from a liquidation of the equipment, such evidence is admittedly difficult to obtain and present. The difficulty was compounded by the belligerent refusal of Defendants to cooperate with Trustee's efforts. On the other hand, the Court must not adopt a punitive valuation in response to Defendants' misconduct. The remedy for the misconduct lies in the punitive damages and not in the actual damages.

Using the selling price as a guide, and taking the IRS depreciation calculations into account together with the Court's common sense and experience, the Court finds that the actual liquidation value of the equipment was $6,500.00 excluding the value of the bread mixer. As for the bread mixer, Defendants apparently discarded it because it was inoperable at the time of repossession. While the Court would prefer Trustee to make that determination, the Court has no cause to question Defendants' conclusion. Furthermore, because Defendants were not aware of the automatic stay at the time they discarded the bread mixer, that action should not result in either actual or punitive damages. Therefore, the Court finds that Defendants caused actual damages of $6,500.00. Because Trustee determined that the equipment is worthless, Defendants shall be permitted to retain and dispose of the equipment and to realize whatever, if any, value it may hold.

■ Next, the Court considers whether costs and attorney fees should be awarded. Trustee expended a significant expense in attorney fees in pursuing this case that he would not have expended if Defendants had simply responded to Trustee's request for documentation and request to inspect the equipment. Defendants' lack of response is due to their ignorance of bank-

ruptcy law. However, this Court cannot excuse their continued ignorance after they were informed of their violations and advised to seek legal counsel. Trustee stated that the attorney fees were $3,037.50 and the expenses were $250.16. Accordingly, the Court finds that Defendants must pay $3,037.50 in attorney fees and $250.16 in expenses.

■ Under Section 362(h) of the Bankruptcy Code, the Court may also award punitive damages when the circumstances are appropriate. 11 U.S.C. § 362(h) (West 1994). The Court has gone to great lengths to understand Defendants' perspective in this case. The Court is aware that Defendants are not natural citizens of this country and that they distrust governmental authority, which may be the cause of some of their difficulties in this case. Defendant Steve Kalkavouras made belligerent and defiant references to government oppression in his homeland. If Defendant's account is to be believed, he and his family have suffered cruelty, injustice, and oppression at the hands of persons associated with that government. The Court's instinct for honesty and candor points to the possibility that Defendant's rantings were calculated to evoke sympathy. Nevertheless, they will be accepted as proof of a state of mind that diminishes, to some extent, Defendants' responsibility for their misconduct. However, while state of mind may mitigate responsibility, it does not eliminate responsibility. The Court is persuaded that Defendants were aware of the law but preferred to remain ignorant of its requirements. Consequently, the circumstances are appropriate for punitive damages.

■ While taking Defendant's state of mind into account in determining the amount of punitive damages, the Court must also take into account the financial circumstances of Defendants. Unfortu-

nately, Defendants did not provide the Court with any information in this regard. The testimony indicates that Defendants run a small business engaged in selling new and used commercial equipment. While Defendants' business apparently is viable, it does not appear from the testimony to be a substantial business. The award of actual damages and attorney fees in this case seems likely to impose a substantial financial hardship on Defendant. On the other hand, punitive damages in some amount are mandated by the misconduct of Defendants.

Moreover, the state-of-mind mitigation specified above does not in any way excuse Defendants' violation of the order issued by this Court on March 19, 2001. The Court verbally ordered Defendants to disclose the location of the restaurant equipment. Defendants adamantly and belligerently stated that they would refuse to comply with that order. They did in fact refuse to comply with that order until May 22, 2001, the first date set for the trial of the case.

Although Defendants eventually complied with the order, the Court cannot ignore the disregard that Defendants exhibited toward the law and this Court during the March 19, 2001 proceeding and by refusing to comply with an order of the Court, issued in open court and verbally directed to Defendants. Taking all these factors into account, the Court imposes punitive damages in the amount of $3,000.00.

An order in accordance with this opinion will be entered on this date.

### ORDER

In accordance with the memorandum opinion entered on this date, it is hereby

ORDERED that Defendants pay actual damages in the amount of $6,500.00 plus post judgment interest of 12% per annum, costs and attorney fees in the amount of $3,287.66, and contempt sanctions in the amount of $3,000.00.