**In the Matter of Mario Guerra CASTILLO, Sylvia Arlene Castillo, Debtors.**

**Mario Guerra Castillo, Sylvia Arlene Castillo, Movants,**

**v.**

**Three Aces Auto Sales, Respondent.**

**No. 11–10108–WHD.**

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

May 25, 2011.

**82.** *Roell v. Withrow,* 538 U.S. 580, 583 123 S.Ct. 1696, 1699, 155 L.Ed.2d 775 (2003).

**83.** *Stern,* 131 S.Ct. at 2620.

Hooman Khoshnood, Atlanta, GA, for Debtors.

### INTERIM ORDER

W. HOMER DRAKE, Bankruptcy Judge.

Mario Guerra Castillo and Sylvia Arlene Castillo (hereinafter the "Debtors") seek an award of damages against Three Aces

Auto Sales (hereinafter the "Respondent"), pursuant to section 362(k) of the Bankruptcy Code. The Debtors contend that the Respondent willfully violated the automatic stay when it refused to turn over the Debtors' vehicle, which the Respondent repossessed prior to the filing of the Debtors' bankruptcy petition.

### FINDINGS OF FACT

Mrs. Castillo purchased a 1989 Nissan pickup (hereinafter the "Vehicle") from the Respondent on April 16, 2010. The Respondent retained a security interest in the Vehicle. Mrs. Castillo defaulted on the payments, and, although the balance on the debt owed to Respondent was only approximately $700, the Respondent repossessed the Vehicle on January 3, 2011.

Prior to the repossession of the Vehicle, Mr. Castillo had utilized the Vehicle in his trade as a cabinet maker. For fifteen years, Castillo had been employed by a cabinet company in Newnan, earning approximately $800–$2,500 per week. He was laid off from this position in April 2009. After being laid off, Castillo worked as an independent contractor providing the same type of services, for which he earned approximately $600–$800 per week. From April 2009, he was unable to find permanent, full-time employment. On or about January 21, 2011, he was offered such a position in LaGrange. Mr. Castillo declined this offer of permanent employment because he did not have access to a vehicle in which he could transport his tools and materials.

On January 7, 2011, the Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Upon the date of filing, the Debtors' attorney left a voice mail message for the Respondent regarding the filing of the petition. Due to an ice storm, which closed the majority of business and government offices in the Atlanta metropolitan area, including this Court, the Debtors' attorney was unable to speak with the Respondent until January 13, 2011. At that time, the Respondent refused to return the Vehicle to the Debtors without documentation to substantiate their claim to have filed a Chapter 13 case and proof of insurance coverage. The Respondent did not receive a facsimile of the bankruptcy petition until on or about January 15, 2011.

On January 20, 2011, the Debtors filed a Motion for Sanctions and to Compel Turnover of the Vehicle. Lawson, on behalf of the Respondent, left a message for the Debtors' attorney on January 24, 2011, and communicated with the Debtors' attorney's office on January 25, 2011, at which time he agreed that the Debtors could pick up the Vehicle if the Debtors' attorney faxed "proper" paperwork to Lawson, which apparently included proof of insurance coverage and a motion for turnover that referenced the correct vehicle, since the first motion for turnover filed incorrectly listed the vehicle as 1999 Ford Taurus. Lawson received a fax with such information on January 25, 2011 and thereafter, assumed, pursuant to his conversation with the Debtors' attorney's office, the Debtors would come and pick up the Vehicle.

On January 27, 2011, the Court held an expedited hearing on the Motion. The Respondent did not appear at the hearing, but maintains that, at the time of the hearing, it believed the matter had been settled by the Respondent's agreement with the Debtors' counsel that the Debtors could pick up the Vehicle upon receipt of proof of insurance coverage. On January 28, 2011, the Court issued an Order Granting the Debtors' Motion to Compel Turnover. The Court's January 28th Order directed the Respondent to "immediately release the 1989 Nissan Pick-up ... into the possession of the Debtors."

On February 2, 2011, Michael Lawson, a representative of the Respondent, called the Debtors' attorney's office to inquire as to why the Debtors had not come to pick up the Vehicle. The Debtors picked up the Vehicle from the Respondent on February 3, 2001. At that time, the Vehicle was missing its original battery, and the stereo in the Vehicle was damaged, such that the compact-disc player did not function.

On February 24, 2011, the Court held an evidentiary hearing to determine whether the Respondent willfully violated the automatic stay and, if so, whether sanctions should be assessed against the Respondent. Following the hearing, the Court took the matter under advisement.

## DISCUSSION

### A. A WILLFUL VIOLATION OF THE AUTOMATIC STAY

The commencement of a bankruptcy case, upon the filing of a voluntary petition, creates a bankruptcy estate. 11 U.S.C. §§ 541(a); 301. If the debtor commences a case by filing a petition under Chapter 13, "property of the estate" includes, among other interests, those property interests specified in section 541 of the Code. *See* 11 U.S.C. § 1306. Those interests include "all legal or equitable interests of the debtor in property as of the commencement of the case," without regard to the fact that the debtor is not in possession of the property. 11 U.S.C. § 541(a)(1) ("Such estate is comprised of all the following property, wherever located and by whomever held."). A debtor retains a legal interest, within the meaning of section 541(a)(1), in a vehicle repossessed prior to the filing of the debtor's petition so long as the debtor continues to hold legal title to the vehicle under applicable state law. *See Motors Acceptance Corp. v. Rozier (In re Rozier)*, 348 F.3d 1305, 1307(11th Cir.2003) ("If, as the dis-

trict court held, both legal title and the right of redemption of a vehicle remain with a defaulted debtor even after his creditor's repossession of the vehicle, then the vehicle remains part of the debtor's bankruptcy estate under section 541(a)(1) of the Bankruptcy Code. . . ."); *see also Bell–Tel Credit Union v. Kalter*, 292 F.3d 1350 (11th Cir.2002); *Charles R. Hall Motors, Inc. v. Lewis*, 137 F.3d 1280, 1285 (11th Cir.1998). Under the Georgia law applicable to this case, " 'ownership of collateral does not pass to a creditor upon repossession, but remains with the debtor until the creditor complies with the disposition or retention procedures of the Georgia UCC.' " *Motors Acceptance Corp. v. Rozier (In re Rozier)*, 376 F.3d 1323 (11th Cir.2004) (citing *Motors Acceptance Corp. v. Rozier*, 278 Ga. 52, 597 S.E.2d 367 (2004)).

Here, the Respondent repossessed the Vehicle four days prior to the filing of the Debtors' petition. Nonetheless, the Vehicle became property of the Debtors' bankruptcy estate upon the filing of the Debtors' petition on January 7, 2011. The commencement of a bankruptcy case also triggers an automatic stay that prevents creditors from taking "any action to obtain possession of property of the estate . . . or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3)

In this case, the Respondent violated the automatic stay by refusing to turn over the Vehicle upon the request of the Debtors. A creditor cannot decide unilaterally whether a debtor's proposed plan provides adequate protection. *In re Sharon*, 234 B.R. 676 (6th Cir. BAP 1999). Instead, a creditor must initiate an action to bring the matter before the Bankruptcy Court. To do otherwise, and force the debtor to file a complaint for turnover, violates section 362(a)(3). *See id.; see also*

*Thompson v. GMA Corp., LLC,* 566 F.3d 699 (7th Cir.2009); *In re Rutherford,* 329 B.R. 886 (Bankr.N.D.Ga.2005) (Drake, J.).

■ The Debtors are seeking payment of attorney's fees, actual damages, and punitive damages pursuant to section 362(k). Before the Court can award such damages, the Court must determine whether the Respondent's failure to turn over the Vehicle upon the Debtors' request constitutes a willful violation of the automatic stay. A "willful" violation occurs when the creditor knew that the automatic stay had been invoked and intended the action that violated the stay. *See In re Jove Engineering, Inc.,* 92 F.3d 1539, 1555 (11th Cir. 1996).

■ Here, Lawson acknowledged during the evidentiary hearing that the Respondent received notice of the Chapter 13 petition. The evidence is unclear, however, as to when the Respondent became aware of the filing and whether the Respondent had any opportunity immediately following the filing of the petition to verify the petition had in fact been filed. According to the Court's records, the petition was filed electronically at 2:53 p.m. At that time, the Debtors' attorney left a voice mail message with the Respondent, and Lawson testified that he was aware of the filing on January 7, 2011, but received no documentation by way of facsimile on that day. It is not clear that the Respondent received notice of the filing early enough to contact the Bankruptcy Court Clerk's office, which closes at 4:00 p.m., to inquire as to whether the Debtors had actually filed a petition. Thereafter, the area suffered a severe ice storm, and the Court did not reopen again until the morning of Thursday, January 13, 2011. This was the day that Lawson testified he spoke with the Debtors' attorney's office and informed the Debtors' attorney that he needed documentation and proof of insurance. Lawson appears to have held a good faith belief that the Debtors had an obligation to provide him with official documents. Yet, when the Respondent communicated again with the Debtors' attorney's office about the filing of the petition on January 13, 2011, he could also have inquired with the Clerk's office as to whether the Debtors had, in fact, filed a petition. At that time, the Respondent had the obligation to either turn over the Vehicle or file an emergency motion for relief from the automatic stay. He did not, however, have the right to do nothing and force the Debtors to take steps to recover the Vehicle. If the Respondent had legitimate concerns about the Debtors' failure to provide proof of insurance, the Respondent could have filed an emergency motion for relief from the stay, through which the Respondent could have obtained an emergency, even *ex parte,* determination as to whether it would be required to turn over the Vehicle. *See* BLR 4001–1. Accordingly, the Court finds that, beginning with the Respondent's failure to either release the Vehicle on January 13, 2011 or to file a motion for relief from the automatic stay, the Respondent was in willful violation of section 362(a)(3).

■ This violation appears to have ended, however, on or about January 28, 2011. Following the hearing on the Debtors' motion to compel turnover of the Vehicle, the Court entered its January 28th Order directing the immediate release of the Vehicle. The Debtors asserted that, although they faxed the Respondent a copy of this Order, the Respondent failed to take any action. The Respondent counters that, as of January 25, 2011, after speaking with a representative of the Debtors' attorney's office, Lawson believed that, in exchange for the provision of the "proper" paperwork and the proof of insurance, the Respondent had agreed that the Debtors

could come and pick up the Vehicle. While the Debtors appear to have been waiting for the Respondent to take further action to return the Vehicle, the Respondent assumed that the Debtors were free to retrieve the Vehicle at any time after his January 25th conversation with their attorney. This appears to have been a simple misunderstanding between the parties. The Court's January 28th Order, which was prepared by the Debtors' attorney, stated that the Respondent must "immediately release" the Vehicle to the Debtors. It did not say the Respondent must immediately "return" or "deliver" the Vehicle to the Debtors. Accordingly, the Court cannot say that the Respondent's interpretation of its obligation was unreasonable.

## B. Damages

 Pursuant to section 362(k), "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). When determining actual damages for a willful violation of the automatic stay, this Court applies a preponderance of the evidence standard. *See In re Spinner,* 398 B.R. 84 (Bankr.N.D.Ga.2008) (Diehl, J.). Actual damages "must be prove[n] with reasonable certainty, and mere speculation, guess or conjecture will not suffice." *Aiello v. Providian Fin. Corp.,* 257 B.R. 245, 249 (N.D.Ill.2000), *aff'd,* 239 F.3d 876 (7th Cir.2001); *In re Heghmann,* 316 B.R. 395, 405 (1st Cir. BAP 2004) ("[A]ctual damages should be awarded only if

there is concrete evidence supporting the award of a definite amount."); *In re Sculky,* 182 B.R. 706, 708 (Bankr.E.D.Pa. 1995) ("Damages may not be awarded based upon speculation, guess and conjecture."). Punitive damages are appropriate only when the creditor has acted maliciously or in bad faith. *See In re Esposito,* 154 B.R. 1011 (Bankr.N.D.Ga. 1993) (Murphy, J.).

 The Debtors seek an award of actual damages, attorney's fees, and punitive damages.[1] As to the actual damages, Castillo's testimony establishes that Castillo was unable to work as a self-employed cabinet maker during the time he lacked possession of the Vehicle and could have earned between $600 and $800 per week during this period from odd jobs. Accordingly, Castillo is entitled to an award of damages in the amount of $1600, which represents $800 a week for the approximately two-week period during which the Respondent's willful violation of the automatic stay prevented Castillo from working.

Further, besides losing potential income from these odd jobs, Castillo testified that, while the car was in the Respondent's possession, Castillo had located full-time employment. Specifically, he testified that, on or about January 21, 2011, he was offered a position as lead installer, but could not accept the position since it required him to start immediately and, without the Vehicle, he did not have sufficient transportation. In the current economy, the Court recognizes that full-time, permanent work is of great value, especially to one who has been seeking such employ-

---

1. To the extent the Debtors are seeking damages based on the theory that they would not have filed this petition, but for the repossession of the Vehicle, the Court reminds the Debtors that the repossession itself did not violate the automatic stay. The violation occurred only when the Debtors requested the return of the Vehicle and the Respondent refused to release the Vehicle. Accordingly, any damages arising from the repossession itself are not properly compensable under section 362(k).

ment for almost two years. Quantifying the value of this employment, however, is difficult. *See In re Cox,* 214 B.R. 635 (Bankr.N.D.Ala.1997).

When calculating the actual damages arising from the loss of a new job due to a stay violation, the *Cox* court considered the measure of wages the debtor was to earn and the likelihood of the debtor's retention of the new position, given his "past employment record, the types of employments in which [the debtor had] been engaged, the stable or unstable character of those employments, his condition of health and ability to labor, and the probability or likelihood that his employment would have continued in the future for a reasonable length of time." *Id.* at 645. The court also focused on the fact that the stay violation did not impair permanently the debtor's ability to work and, therefore, to mitigate his losses.

■ The Debtors have established that Castillo lost the opportunity for full-time employment due to the Respondent's violation of the automatic stay. If the Respondent had returned the Vehicle to the Debtors on January 13, 2011, Castillo could have accepted the position. There is little evidence, however, as to what compensation Castillo would have earned in this new position. Although he testified that he earned between $800 and $2,400 per week when working full-time prior to being laid off, he also testified that this very wide range depended upon the work load. The Court has no evidence from which it can conclude that the work load in January 2011 at a different company would have been equivalent to the work load available in 2009. The evidence is simply not substantial enough to allow the Court to determine the "measure of wages" to apply in calculating the damage suffered by Castillo.

Secondly, the Court must consider the fact that Castillo's ability to work was not "permanently impaired" by the Respondent's stay violation. *Cox,* 214 B.R. at 642. As in the *Cox* case, although Castillo was prevented from accepting this offer of full-time employment, there is no reason to believe that he will never receive another suitable offer of full-time employment. For that matter, Castillo testified that, even while unemployed, he was able to earn between $600 and $800 per week as a self-employed contractor. There is no evidence that Castillo will not continue to have the ability to earn between $600 and $800 per week going forward. Even if the Court could determine the measure of wages payable from the new full-time position, in order to mitigate the Debtors' loss, this amount would necessarily have to be deducted from any amount awarded by the Court, potentially resulting in little to no recovery.

■ As to the damage to the Vehicle itself, Castillo testified the Vehicle would not start when he went to pick it up from the Respondent. He believed that the working battery from his car had been replaced by a defective one. He also asserted that the compact disc player in his stereo no longer worked after he retrieved the Vehicle. The Court cannot conclude that this property damage resulted from the Respondent's violation of the automatic stay. There is no evidence to suggest that the damage occurred because the Respondent failed to turn over the Vehicle upon the Debtors' request resulted from the stay violation. The damage may just as easily have occurred because of the repossession itself, which the parties agree occurred pre-petition and was, therefore, not in violation of the automatic stay. Further, even if the Court determined that the property damage resulted from the Respondent's failure to return the Vehicle,

Castillo failed to present the Court with any evidence as to the cost to repair the damage, and the Court cannot speculate as to this amount.

The Debtors were forced to resort to legal action to recover the Vehicle and, in doing so, incurred attorney's fees for the filing of the motion for turnover. The motion would not have been necessary had the Respondent turned over the Vehicle on January 13, 2011. The Debtors' attorney stated in Court that she has performed ten hours of services in connection with the matter at an hourly rate of $250 per hour. The Court must review the services performed, however, to determine whether the services were reasonable and necessary. Accordingly, the Debtors' attorney should file a detailed affidavit as to the services rendered in this matter. Once the affidavit is filed, the Respondent shall have twenty (20) days within which to file an objection to the fees requested. If the Respondent files such an objection, the Court shall consider the objection and may hold a further hearing on the reasonableness of the fees. Otherwise, the Court may award a judgment against the Respondent for actual damages discussed above and the attorney's fees requested without the need for a further hearing.

Finally, an award of punitive damages would not be appropriate in this case. They are appropriate when "egregious, intentional misconduct on the violator's part is necessary to support a punitive damages award." *United States v. Ketelsen (In re Ketelsen)*, 880 F.2d 990, 993 (8th Cir.1989). "In determining whether circumstances exist for an award of punitive damages under § 362(h), Courts rely on a variation of the following factors: (1) the nature of the Respondent's conduct; (2) the nature and extent of the harm to the plaintiff; (3) the Respondent's ability to pay; (4) the motives of the Respondent; and (5) any provocation by the debtor." *In re Roche*, 361 B.R. 615 (Bankr.N.D.Ga.2005) (citing *In re Wagner*, 74 B.R. 898, 905 (Bankr.E.D.Pa.1987)); *Heghmann v. Indorf (In re Heghmann)*, 316 B.R. 395, 405–406 (1st Cir. BAP 2004); *Keen v. Premium Asset Recovery Corp. (In re Keen)*, 301 B.R. 749, 755 (Bankr. S.D.Fla.2003); *Bishop v. U.S. Bank/Firstar Bank, N.A. (In re Bishop)*, 296 B.R. 890, 898 (Bankr.S.D.Ga.2003).

The Debtors have not convinced the Court that the Respondent had malicious motives or engaged in bad faith conduct. By refusing to return the Vehicle, the Respondent willfully violated the automatic stay. Lawson testified credibly, however, that he believed, based on past experience and conversations with the trustee, that the Respondent was entitled to retain the Vehicle until it received proper paper work from the Court and proof of insurance coverage. The Respondent has no history of appearing before this Court on similar violations. Once the Respondent received what it considered the proper paperwork and proof of insurance, Lawson assumed the Debtors would retrieve the Vehicle. It appears that, but for a misunderstanding between the Respondent and the Debtors, the Debtors could have retrieved the Vehicle as early as January 25, 2011. While the Debtors clearly suffered harm from the loss of the Vehicle, there is insufficient evidence to conclude that the Respondent engaged in egregious conduct with any ill-will toward the Debtors or that punitive damages are necessary to prevent the Respondent from repeating this conduct in the future.

CONCLUSION

For the reasons stated above, the Debtors' Motion for Sanctions for Willful Violation of the Automatic Stay is **GRANTED.**

The Court finds the Respondent willfully violated the automatic stay.

**IT IS ORDERED** that the Debtors shall have twenty (20) days from the date of the entry of this Order to file with the Court and serve upon the Respondent an affidavit detailing the nature of legal services rendered in connection with the Debtors' Motion for Turnover. The Respondent shall have twenty (20) days from the date of service of the affidavit upon the Respondent to file an objection to the fees requested. Following a determination as to whether the fees requested by the Debtors' counsel are reasonable and necessary, the Court will enter a judgment against the Respondent for $1,600 in actual damages, plus fees in the amount determined by the Court.