**In re Alicia Genise STEPHENS,
Debtor.**

**Alicia Genise Stephens, Plaintiff,**

v.

**Guaranteed Auto, Inc., Defendant.**

**Bankruptcy No. 13–53261.**

**Adversary No. 13–5062.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

July 3, 2013.

Charles M. Clapp, Law Offices of Charles Clapp, LLC, Atlanta, GA, for Plaintiff.

Guaranteed Auto, Inc., Roswell, GA, pro se.

## ORDER

PAUL W. BONAPFEL, Bankruptcy Judge.

Guaranteed Auto, Inc., repossessed Alicia Stephen's car before she filed her Chapter 13 petition. After Guaranteed Auto's principal, Nick Hart, received actual notice of the filing of the case from Ms. Stephens' attorney, it refused to return it.

To get her car back, Ms. Stephens filed this adversary proceeding for turnover of the car and damages for Guaranteed Auto's violation of the automatic stay of 11 U.S.C. § 362(a). She requested, and the Court scheduled, an emergency hearing. Prior to the hearing, Guaranteed Auto sold the car.

Because Guaranteed Auto's actions were in willful and intentional violation of the automatic stay of 11 U.S.C. § 362(a) after actual notice of the bankruptcy case, Ms. Stephens is entitled under § 362(k) to recover $1,559 as actual damages and $4,325 as attorney's fees incurred in enforcing the stay. Because of the egregious nature of the stay violations, the Court will also

award punitive damages in the amount of $17,890 pursuant to § 362(k).

Although Guaranteed Auto, through Mr. Hart, appeared at two hearings held in this adversary proceeding, it never filed an answer or other response to the complaint. After the time for the filing of responsive pleadings, the Court entered the default of Guaranteed Auto [19] and scheduled a trial on the issue of damages to be awarded. [20]. Guaranteed Auto did not appear at the trial on damages.

The Court heard evidence at the trial from Ms. Stephens and a proffer from her attorney, Charles M. Clapp. At the conclusion of the evidence, the Court announced its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, *applicable under* Rule 7052 of the Federal Rules of Bankruptcy Procedure. This Order summarizes and supplements the Court's findings of fact and conclusions of law.[1]

## I. FACTS

Ms. Stephens purchased a 2000 Lexus GS 300 from Guaranteed Auto, which financed the purchase price and took a security interest in the car. Guaranteed Auto later assigned the loan to First Peachtree Finance, Inc. Ms. Stephens testified that she was told to send her payments to First Peachtree sometime in October 2012.

Shortly before Ms. Stephens filed her Chapter 13 petition on Friday, February

15, 2013, First Peachtree repossessed the car. Ms. Stephens testified that she had discussed the repossession with a representative of First Peachtree in an unsuccessful effort to get her car back before she filed her Chapter 13 case.

Upon the filing of the Chapter 13 case, Ms. Stephens' lawyer notified First Peachtree of the bankruptcy filing and requested return of the car. Within ten minutes, a representative of First Peachtree left a voice mail message for the attorney. The message was that Guaranteed Auto now owned the claim and that the attorney should contact Guaranteed Auto through Nick Hart at a specified telephone number.

On Monday, February 18, the attorney called Mr. Hart. Because Mr. Hart was not available, the attorney spoke with another representative to advise Guaranteed Auto of the filing of the case and to request the return of the car. The representative stated that Guaranteed Auto required proof of full coverage insurance.

On Tuesday, February 19, Ms. Stephens' counsel sent a fax to Guaranteed Auto that included notice of the bankruptcy filing and proof of insurance that Ms. Stephens had obtained. On Wednesday, February 20, the attorney spoke with Mr. Hart, who advised him that Guaranteed Auto would not return the vehicle because it had been repossessed before the Chapter 13 filing.

---

1. The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b). The Bankruptcy Court has authority to hear it under 28 U.S.C. § 157(a) by reference from the District Court pursuant to LR 83.7, NDGa. Because it is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and (O), this Court has authority to determine the matter and enter final judgment under 28 U.S.C. § 157(b)(1).

The Chapter 13 case is assigned to Chief Judge Mullins, who conducted the hearings in

this adversary proceeding on February 26 and March 25, 2013, and who presided over the adversary proceeding until the trial on damages. Judge Bonapfel presided at the trial on damages; announced findings of fact and conclusions of law on the record at the trial, based on the evidence presented at the trial and the record in this adversary proceeding, as summarized and supplemented by this Order; and will enter judgment in accordance with this Order. Chief Judge Mullins will continue to preside over the Chapter 13 case.

Counsel urged Mr. Hart to consult a bankruptcy attorney about the matter.

After Mr. Hart declared that he would not return the car, Ms. Stephens filed her complaint against Guaranteed Auto, asserting a violation of the automatic stay of 11 U.S.C. § 362(a) and seeking turnover of the car.

On February 20, the Court entered an Order scheduling an emergency hearing, at Ms. Stephens' request, for February 26. Her counsel served copies of the complaint and notice of the hearing to Mr. Hart by mail, by facsimile, and by personally delivering a copy to Guaranteed Auto's business premises.

Before the emergency hearing, Mr. Hart told Ms. Stephens' lawyer that Guaranteed Auto sold the car on Sunday, February 24. Guaranteed Auto never sent any notice to Ms. Stephens with regard to the sale.

■ Mr. Hart appeared at the February 26 hearing on behalf of Guaranteed Auto [2] and represented to the Court that Guaranteed Auto did not hold either the car or the note. Because, based on Mr. Hart's representation, Ms. Stephens was not seeking relief against the proper party, the Court declined to enter any relief at the emergency hearing.

Ms. Stephens amended her complaint to add First Peachtree as a party, based on Mr. Hart's representations at the emergency hearing [8], and the Court scheduled a second emergency hearing for March 25, 2013.[10]. Mr. Hart again appeared, as did an attorney for First Peachtree. At this hearing, First Peachtree established that Guaranteed Auto had acquired the claim and security interest from First Peachtree. Ms. Stephens voluntarily dismissed First Peachtree as a defendant. [16].

At the trial on damages, Ms. Stephens itemized the damages she has incurred as a result of the failure of Guaranteed Auto to return her car. The damages, totaling $1,559, include: $220 she paid to obtain insurance on the car after being advised she had to do that to get the car back; $228 in lost earnings because she had to appear at hearings in the bankruptcy court; $650 in actual and reasonably anticipated expenses required to obtain transportation to work; and $461 for the loss of personal property that was in the car at the time of its repossession.

In addition, Ms. Stephens has incurred $4,325 in attorney's fees in connection with this matter. The Court finds the amount of the fees to be reasonable and necessarily incurred.

The Court discusses the issue of punitive damages in the next section.

## II. DISCUSSION

■ Upon the filing of a bankruptcy case, the automatic stay of 11 U.S.C. § 362(a) becomes effective. In Georgia, if

2. Guaranteed Auto is a corporation. A corporation or other legal entity (such as a limited liability company or a partnership) must have a lawyer represent it in a federal court. *E.g., Rowland v. California Men's Colony,* 506 U.S. 194, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993); *Palazzo v. Gulf Oil Corp.,* 764 F.2d 1381, 1385 (11th Cir.1985) (stating the well-established rule that a fictional legal entity such as a corporation must be represented by a licensed attorney even when the non-attorney seeking to represent the corporation is its president and major stockholder).

Although Mr. Hart is not an attorney, the Court heard him at the hearing on February 26, 2013, but advised him that Guaranteed Auto would have to have an attorney in future proceedings. Guaranteed Auto and Mr. Hart have received the same admonition in other proceedings in this District in which it refused to return a repossessed vehicle. See *Moxley v. Guaranteed Auto, Inc. (In re Moxley),* Adv. No. 13–04008, Docket No. 8 (Bankr. N.D.Ga. Mar. 27, 2013); *Jones Lightsy v. Guaranteed Auto, Inc.,* Adv. No. 12–05400, Docket No. 10 (Bankr.N.D.Ga. Aug. 9, 2012).

a creditor has repossessed a debtor's motor vehicle prior to the filing of the petition, but has not yet disposed of it, the debtor continues to have an ownership interest in the vehicle, and it is property of the estate. *E.g., Motors Acceptance Corp. v. Rozier (In re Rozier)*, 376 F.3d 1323 (11th Cir.2004).

■■■ Among other things, the automatic stay prohibits any act to exercise control over property of the estate. 11 U.S.C. § 362(a)(3). The continued possession of a repossessed vehicle is such an act, and a creditor who refuses to return it violates the automatic stay. *Motors Acceptance Corp. v. Rozier (In re Rozier)*, 376 F.3d 1323 (11th Cir.2004); *see, e.g., Rutherford v. Auto Cash, Inc. (In re Rutherford)*, 329 B.R. 886 (Bankr.N.D.Ga.2005); *Kirk v. Shawmut Bank (In re Kirk)*, 199 B.R. 70 (Bankr.N.D.Ga.1996).[3]

■■■ Furthermore, a creditor who repossesses a vehicle prior to the filing of a bankruptcy case cannot unilaterally insist that the debtor provide adequate protection, such as proof of insurance, as a condition to the return of the car, unless the creditor moves immediately in the bankruptcy court for an order requiring adequate protection. *See, e.g., Castillo v. Three Aces Auto Sales (In re Castillo)*, 456 B.R. 719, 724 (Bankr.N.D.Ga.2011); *cf. Roche v. Pep Boys, Inc. (In re Roche)*, 361 B.R. 615 (Bankr.N.D.Ga.2005).

The Court recognizes that courts disagree as to whether a creditor who repossesses a vehicle before the filing of a bankruptcy case may condition turnover of the vehicle on the provision of adequate protection to which it is entitled under 11 U.S.C. § 363(e).

Some courts have concluded that a creditor in possession of a Chapter 13 debtor's vehicle at the time of filing may decline to turn over the vehicle unless the debtor provides adequate protection, such as proof of insurance coverage.[4]

Appellate courts, however, have consistently rejected this view. Rather, they conclude that the automatic stay of 11 U.S.C. § 362(a) and the turnover provisions of 11 U.S.C. § 542(a) are self-executing and that a creditor cannot condition return of the car on the debtor's provision of adequate protection that satisfies the creditor.[5]

---

3. *Accord, e.g., Weber v. SEFCU (In re Weber)*, 719 F.3d 72, 2013 WL 1891371 (2d Cir.2013); *Thompson v. General Motors Acceptance Corp., LLC (In re Thompson)*, 566 F.3d 699, 703 (7th Cir.2009); *Unified People's Fed. Credit Union v. Yates (In re Yates)*, 332 B.R. 1, 7 (10th Cir. BAP 2005); *TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 682 (6th Cir. BAP 1999); *cf., e.g., Knaus v. Concordia Lumber Co., Inc. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir.1989) (In Chapter 11 case involving business property seized by sheriff pursuant to prepetition process, court stated that the duty of a creditor to turn over property seized prepetition "is not contingent upon any predicate violation of the stay, any order of the bankruptcy court, or any demand by the creditor.").

4. *E.g., Nash v. Ford Motor Credit Co. (In re Nash)*, 228 B.R. 669, 673–674 (Bankr.N.D.Ill.

1999), *abrogated by Thompson v. General Motors Acceptance Corp., LLC (In re Thompson)*, 566 F.3d 699 (7th Cir.2009); *In re Fitch*, 217 B.R. 286, 290–91 (Bankr.S.D.Ca.1998); *In re Brown*, 210 B.R. 878, 883 (Bankr.S.D.Ga. 1997); *Massey v. Chrysler Financial Corp. (In re Massey)*, 210 B.R. 693, 696 (Bankr.D.Md. 1997); *In re Young*, 193 B.R. 620, 623–624 (Bankr.D.D.C.1996); *Deiss v. Southwest Recovery (In re Deiss)*, 166 B.R. 92, 94 (Bankr. S.D.Tex.1994).

5. *Weber v. SEFCU (In re Weber)*, 719 F.3d 72, 2013 WL 1891371 (2d Cir.2013); *Thompson v. General Motors Acceptance Corp., LLC (In re Thompson)*, 566 F.3d 699, 703 (7th Cir.2009); *Unified People's Fed. Credit Union v. Yates (In re Yates)*, 332 B.R. 1, 7 (10th Cir. BAP 2005); *TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 682 (6th Cir. BAP 1999); *Abrams v. Sw. Leasing & Rental Inc. (In re*

The Eleventh Circuit has not addressed this issue.[6] In the absence of Eleventh Circuit precedent, bankruptcy judges in the Northern District of Georgia have ruled that the automatic stay requires the immediate and unconditional return of a repossessed vehicle unless the creditor promptly seeks an order in the bankruptcy court for adequate protection and permission to withhold possession of the vehicle pending the provision of adequate protection. *E.g., Castillo v. Three Aces Auto Sales (In re Castillo),* 456 B.R. 719, 724 (Bankr.N.D.Ga.2011); *cf. Roche v. Pep Boys, Inc. (In re Roche),* 361 B.R. 615 (Bankr.N.D.Ga.2005).

■ The Court agrees with this approach. It gives effect to the self-executing nature of the automatic stay and turnover provisions by putting the burden on the creditor to seek relief in the bankruptcy court while recognizing that the requirement of immediate delivery of an uninsured vehicle to the debtor poses unfair risks to the creditor. In this regard, it gives practical effect to provisions of the Bankruptcy Code that authorize a bankruptcy court, without a hearing, to grant relief from the stay to prevent irreparable damage or to condition the use of encumbered property on the provision of adequate protection. 11 U.S.C. §§ 362(f), 363(e); Fed. R. Bankr.P. 4001(a)(2).[7]

*Abrams),* 127 B.R. 239, 243 (9th Cir. BAP 1991); *cf., e.g., Knaus v. Concordia Lumber Co., Inc. (In re Knaus),* 889 F.2d 773, 775 (8th Cir.1989) (In Chapter 11 case involving business property seized by sheriff pursuant to prepetition process, court stated that the duty of a creditor to turn over property seized prepetition "is not contingent upon any predicate violation of the stay, any order of the bankruptcy court, or any demand by the creditor.").

6. The Eleventh Circuit has ruled that, when Georgia law governs the matter, a creditor who refuses to return a vehicle repossessed prepetition violates the automatic stay. In *Motors Acceptance Corp. v. Rozier (In re Rozier),* 348 F.3d 1305 (11th Cir.2003), the Eleventh Circuit certified the question of the rights of a debtor in a repossessed car under Georgia law to the Supreme Court of Georgia. The Supreme Court of Georgia concluded that a debtor continues to be the owner of a vehicle after its repossession. *Motors Acceptance Corp. v. Rozier,* 278 Ga. 52, 597 S.E.2d 367 (2004). In accordance with the Supreme Court's determination, the Eleventh Circuit ruled that a car repossessed prepetition remains property of the estate and that a creditor violates the automatic stay by refusing to return it. *Motors Acceptance Corp. v. Rozier (In re Rozier),* 376 F.3d 1323 (11th Cir.2004).

The Court notes that the Second Circuit in *Weber v. SEFCU (In re Weber),* 719 F.3d 72, 80, 2013 WL 1891371 at *7 (2d Cir.2013), observed that the Eleventh Circuit did not

follow the approach of other appellate courts that the automatic stay requires the return of a vehicle repossessed prior to the bankruptcy filing. See note 5 and accompanying text. The Second Circuit cited the Eleventh Circuit's decisions in *Bell–Tel Fed. Credit Union v. Kalter (In re Kalter),* 292 F.3d 1350, 1356–60 (11th Cir.2002) (applying Florida law) and *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis),* 137 F.3d 1280, 1284–85 (11th Cir. 1998) (applying Alabama law).

*Kalter* and *Lewis* held that debtors in Florida and Alabama, respectively, do not have an ownership interest in a vehicle repossessed before the filing of a bankruptcy petition that makes it property of the estate. Because the repossessed car itself is not property of the estate, these courts concluded, the creditor did not violate the automatic stay by failing to return it.

Under the *Rozier* decisions just discussed, however, the premise of *Kalter* and *Lewis*— that a car repossessed prepetition is not property of the estate—does not apply under Georgia law. Thus, when Georgia law governs the transaction, *Rozier* squarely holds that retention of a repossessed vehicle violates the automatic stay.

The issue of whether a creditor may demand adequate protection as a condition for return of a repossessed vehicle without violating the automatic stay was not before the *Rozier* court.

7. If a creditor with a repossessed vehicle at the time of the filing of the bankruptcy case

If a creditor violates the automatic stay, an individual harmed by the violation may seek damages under section 362(k)(1) of the Bankruptcy Code. It provides, in pertinent part, "[A]n individual injured by any willful violation of [the automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). A "willful" violation occurs when the creditor knew that the automatic stay had been invoked and intended the action that violated the stay. *E.g., In re Jove Engineering, Inc.*, 92 F.3d 1539, 1555 (11th Cir. 1996).

Guaranteed Auto violated the automatic stay when it refused to return the car to Ms. Stephens and when it demanded proof of insurance coverage but did not promptly file a motion to bring the insurance issue before the Court.[8] Guaranteed Auto likewise violated the automatic stay when it sold the car.

Guaranteed Auto had actual knowledge of the filing of the Chapter 13 case before the stay violations occurred. Ms. Stephens suffered damages and incurred attorney's fees as a result of the stay violations, as Part I discusses.

Under § 362(k), therefore, Guaranteed Auto is liable for Ms. Stephens' actual damages in the amount of $1,559 and her attorney's fees in the amount of $4,325 that resulted from the willful violations of the stay.

Section 362(k) authorizes the Court to award punitive damages in "appropriate circumstances." As a general rule, punitive damages for a violation of the automatic stay are appropriate only when the violator has engaged in egregious, intentional misconduct. *See, e.g., Roche v. Pep Boys, Inc. (In re Roche)*, 361 B.R. 615 (Bankr.N.D.Ga.2005). As the court in *Roche* observed, courts typically consider the following factors in determining whether to award punitive damages: (1) the nature of the violator's conduct; (2) the nature and extent of the harm to the debtor; (3) the violator's ability to pay; (4) the motives of the violator; and (5) any provocation by the debtor. *Id.* at 617.

The factors primarily applicable here are the nature of Guaranteed Auto's conduct and its motives. Certainly Ms. Stephens did not provoke the stay violations in any sense. The evidence shows nothing about Guaranteed Auto's ability to pay. A violator's net worth could be a factor in determining an amount of punitive damages that is sufficient to accomplish the critical objectives of punitive damages, punishment and deterrence, but neither party raised this issue.

With regard to the harm to Ms. Stephens, the evidence does not show any significant actual economic damages beyond those that the Court has awarded.

---

thinks that its collateral is in jeopardy because of the lack of insurance or for other reasons, it should immediately file a motion with the Bankruptcy Court that seeks adequate protection and temporary relief from the stay to permit it to maintain possession of the vehicle until the debtor obtains insurance or provides other adequate protection that the court requires. See 11 U.S.C. § 362(d) and § 363(e). The creditor should request an emergency hearing or, if appropriate, *ex parte* relief. See 11 U.S.C. § 362(f) (authorizing relief from the automatic stay to prevent irreparable damage, with or without a hearing); § 363(e) (authorizing the court to condition the use of property on the provision of adequate protection, with or without a hearing); Fed. R. Bankr.P. 4001(a)(2) (procedures for *ex parte* stay relief).

8. The Court takes the lack of insurance seriously and will not permit a debtor to obtain or retain possession of a vehicle that is not adequately insured.

In particular, the car appears to be worth about what she owed on it. Nevertheless, it is an economic reality that Ms. Stephens, like most residents of the metropolitan Atlanta area, relies heavily on her car for transportation to work and to other destinations in her daily life. Moreover, a Chapter 13 debtor has the right to expect that a creditor with a lien on her car will promptly comply with the requirements of the automatic stay. Ms. Stephens has suffered damages as a result of the stay violations that may not be easily quantifiable, but they are real. This factor supports an award of punitive damages to provide some compensation for noneconomic injuries Ms. Stephens has suffered due to the loss of the car.

The primary bases for the award of punitive damages in this proceeding are Guaranteed Auto's conduct and its motives. Mr. Hart received prompt, actual notice of the bankruptcy filing and of the automatic stay. Ms. Stephen's counsel advised Mr. Hart of the requirements of the automatic stay and urged him to consult his own lawyer about the matter. Instead of complying with the automatic stay, Mr. Hart proceeded to sell the car two days before the February 26 hearing. He did so without providing notice of intent to sell the car as Georgia's Uniform Commercial Code requires. O.C.G.A. § 11–9–611.

If Mr. Hart did not have adequate knowledge about the effect of Ms. Stephens' Chapter 13 filing and the requirements of the automatic stay and did not believe her attorney's explanation, he had plenty of time to consult his own lawyer and to rectify the situation before the February 26 hearing. Instead, he sold the car without any notice to the Debtor.

Mr. Hart's conduct on behalf of Guaranteed Auto displays a total disregard for— indeed an arrogant defiance of—the requirements of the Bankruptcy Code and the provisions of the automatic stay.[9] The Court notes that Guaranteed Auto has been the subject of similar proceedings in other Chapter 13 cases in this District arising out of its failure to return a repossessed car.[10] Guaranteed Auto's violations of the automatic stay were intentional and egregious, and its conduct justifies the imposition of punitive damages.

The only valid defense that Guaranteed Auto ever raised in this proceeding was Mr. Hart's representation at the February 26 hearing that Guaranteed Auto did not own the car or the note. This representation proved to be patently false at the March 25 hearing. Mr. Hart's false misrepresentation provides additional justification for the imposition of punitive damages to punish and deter such misrepresentations.

Nothing in the record indicates that good faith reasons motivated Mr. Hart's conduct on behalf of Guaranteed Auto. To the contrary, the evidence shows that Mr. Hart was determined to sell the car to collect Ms. Stephens' debt regardless of the requirements of the Bankruptcy Code or the consequences of violating the automatic stay.

Acts have consequences, and creditors who act in this fashion must suffer them. Section 362(k) exists to enforce the automatic stay through the award of punitive damages to punish persons that vio-

**9.** Although Mr. Hart appears to have been the sole actor on behalf of Guaranteed Auto with regard to the stay violations, Ms. Stephens did not name him individually as a party. The Court, therefore, need not address the question of whether an individual whose personal conduct violates the stay on behalf of an employer or other principal is jointly and severally liable for the stay violation.

**10.** See note 2.

late the automatic stay and to deter a violator and others from doing so in the future.

In the egregious circumstances of this case, it is appropriate to award punitive damages in an amount that will prevent Guaranteed Auto from realizing its objective of obtaining payment of the debt through violations of the stay and that will also provide an additional monetary sanction to punish and to deter such conduct. The Court will, therefore, award punitive damages in the amount of $17,890, twice the amount of the debt, which the Debtor scheduled as $8,945. The effect is to deny Guaranteed Auto the benefit of its outrageous conduct and to impose an additional penalty of $8,945.

The Court notes that the award of $17,890 is within the range of punitive damages that other courts have awarded on account of a violation of the automatic stay.[11]

## III. CONCLUSIONS OF LAW

The Court concludes that Guaranteed Auto willfully violated the automatic stay of 11 U.S.C. § 362(a) by refusing to turn over the repossessed car to Ms. Stephens and by selling it. Ms. Stephens suffered actual damages in the amount of $1,559 on account of the violations and has incurred $4,325 in attorney's fees. Ms. Stephens is entitled to recover those amounts from Guaranteed Auto pursuant to 11 U.S.C. § 362(k)(1).

In addition, Guaranteed Auto's violations of the automatic stay were intentional, egregious, and outrageous. As a consequence, Ms. Stephens is entitled to an award of $17,890 as punitive damages pursuant to 11 U.S.C. § 362(k)(1).

The Court will enter a separate judgment in favor of Ms. Stephens and against Guaranteed Auto.

---

**11.** *See, e.g., In re White,* 410 B.R. 322 (Bankr. M.D.Fla.2009) ($10,000); *Davis v. Matt Gay Chevrolet, Inc. (In re Davis),* 374 B.R. 366 (Bankr.S.D.Ga.2007) ($2,500); *Bishop v. U.S. Bank/Firstar Bank, N.A. (In re Bishop),* 296 B.R. 890 (Bankr.S.D.Ga.2003) ($50,000); *Mullis v. USA Restaurant Equip. Co. (In re Harsh),* 277 B.R. 833 (Bankr.M.D.Ga.2001) ($3,000) (Chapter 7 case); *Davis v. Gatorwheel, Inc. (In re Davis),* 265 B.R. 453 (Bankr. N.D.Fla.2001) ($4,500); *In re Meeks,* 260 B.R. 46 (Bankr.M.D.Fla.2000) ($35,000).